In re George Rudolph WASHINGTON and Yomma Perry Washington, Debtors.

George Rudolph WASHINGTON and Yomma Perry Washington, Plaintiffs,

v.

VIRGINIA STATE EDUCATION ASSISTANCE AUTHORITY, Defendant.

Bankruptcy No. 83–00100–R.
Adv. No. 83–0138–R.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

June 18, 1984.

Cherry C. Harman, Rappahannock Legal Services, Inc., Tappahannock, Va., for plaintiffs.

Alexander N. Simon, Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court upon the filing of a complaint to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(8), to avoid a judicial lien pursuant to 11 U.S.C. § 522(f)(1), and to enjoin further action by the defendant to sell debtors' jointly owned real estate pursuant to a creditors bill pending in the Circuit Court of Northumberland County, Virginia. After trial and upon the submission of memoranda and after consideration of the facts of this case and the applicable law, this Court renders the following opinion.

## STATEMENT OF FACTS

Between 1972 and 1976, the debtors, George and Yomma Washington, as co-makers with their daughter, executed seven promissory notes representing student loans to their daughter. Each note was due in either May or June 1976 or nine months after their daughter ceased to be a full-time student, whichever occurred first. On November 27, 1978 the student loans were consolidated into an installment note, which note was also executed by the debtors and their daughter. Each of the notes was guaranteed by the Virginia State Education Assistance Authority (the "Authority"). The installment note was ultimately assigned to the Authority on May 15, 1979.

The Authority subsequently obtained a judgment against the debtors in the amount of $6,661.38 and had said judgment docketed in Northumberland County, Virginia. In December of 1982 the Authority filed a creditor's bill in state court seeking the sale of the debtors' residence. On January 6, 1983, the debtors each claimed a $5,000.00 exemption in their residence lo-

cated in Northumberland County, Virginia by recording homestead deeds in the clerk's office of that county. On January 24, 1983 the debtors filed a joint petition in bankruptcy under Chapter 7 of Title 11 of the United States Code.

The debtors' residence upon which the Authority holds a judgment lien is valued by the 1982 county real estate tax assessment at $12,050.00. Robert Granger, a qualified appraiser, testified that the county assessment was unrealistic and determined that the debtors' real property had a maximum value of $10,600.00 and further that he would reduce the value of the property by 20 percent as a forced sale reduction factor, thereby setting the liquidation value of the debtors' home at approximately $8,500.00. As a basis for testifying that the county assessment is unrealistic, Mr. Granger pointed out that the property on which the debtors' home sits will not meet county standards for perculation and that the septic field servicing the house is located on an adjoining neighbor's property. He also found electrical and structural problems with the debtors' residence. Finally, Mr. Granger stated that he questioned whether the property could even be sold given the condition of the home and the existing soil and septic problems.

Mr. Washington testified that he is a truck driver and that he is paid on a percentage basis. His weekly net take home pay ranges from $194.00 to $201.00. During 1982 Mr. Washington was ill with a back problem and in 1983 suffered a ruptured appendix. His income was reduced each year because of time lost due to these ailments, however, he acknowledges the bankruptcy schedules reveal that in 1981 his income from his trade amounted to $15,800.40.

Mrs. Washington is qualified as a substitute teacher although she has not been employed by the local school system since 1982. She testified that she has searched unsuccessfully for other employment in the Northern Neck area [1] but has not looked for employment elsewhere.

The debtors have a 15 year-old son who lives with them. Their monthly bills are currently $791.00 although that figure does not include clothing and medical expenses. Mrs. Washington testified that she cannot afford to take her son to the doctor when he is ill or to buy herself and her husband eyeglasses. In addition, the family has no health insurance.

## CONCLUSIONS OF LAW

The Court is presented with essentially two legal issues that must be resolved. First, this Court must determine whether the student loan for which the debtors were co-makers for their daughter's benefit is a debt that may be discharged in the debtors' Chapter 7 proceeding. This inquiry involves more particularly whether, as to the debtors, the obligation is an "educational loan" and if it is, whether either of the exceptions to nondischargeability exist in this case. Second, this Court must determine whether and to what extent the debtors may avoid the judgment lien against their principal residence.

As a general rule, § 523(a)(8) provides that educational loans are excepted from a debtor's discharge. More specifically, § 523(a)(8) provides:

A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt ...

... for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution of higher education, ....

11 U.S.C. § 523(a)(8).

■■■ The provision is self-executing which means simply that educational loans are presumed to be not discharged in bankruptcy unless an affirmative act is taken to seek determination of the dischargeability

---

**1.** The Northern Neck is generally acknowledged to be that area of Tidewater Virginia, lying between the Rappahannock and Potomac Rivers. Northumberland County is situated in that area.

of the debt. A threshold issue, however, for this Court is whether co-makers who are not students and did not directly benefit by the making of the educational loan are covered by the provisions of § 523(a)(8). Stated differently, the issue is whether as to these particular debtors the loan is indeed an "educational loan." Apparently, only one other court has addressed this issue of the applicability of § 523(a)(8) to non-student co-makers of educational loans. *See In re Boylen*, 29 B.R. 924 (Bankr.N.D. Ohio 1983). That case involved a factual situation highly analagous to the facts in the instant matter. In *Boylen*, Judge White ruled that the provisions of § 523(a)(8) did not apply to a husband co-maker on his ex-wife's student loan. In so ruling, Judge White relied heavily on the policy underlying the provisions of § 523(a)(8) as articulated in the legislative history to the new Bankruptcy Code.

Considerable debate over the student loan exception to discharge at its enactment leaves us now with extensive legislative history as to the intent of that statute. The legislative history provides clearly that the student loan exception was intended to treat "students" differently than other debtors. 29 B.R. at 926. Congress was unwilling to grant students the same discharge as other debtors where that student took out educational loans and then attempted to discharge those obligations after completing one's education.

> What [this provision] does prevent is that when a student gets through school, having taken a student loan, comes out, and says, "Well, it is nice to get a fresh start. I will not pay back my loan. I will declare bankruptcy and I will not have to worry about it." And discharge the only loan they have which is a student loan.

124 Cong.Rec.H. 466 (daily ed. Feb. 1, 1978) (comments of Cong. Ertel). Thus, to conclude that non-student co-makers are covered by § 523(a)(8) would expand the coverage of that provision to parties not contemplated by Congress in enacting the new Bankruptcy Code. Thus, this Court agrees with Judge White in *In re Boylen* where he stated:

> "[C]ongress had no intention to except a co-maker's liability on student loan debt from discharge. Such an exception would be utterly contrary to the fresh start pervasive throughout this Bankruptcy Code and the Bankruptcy Act of 1898 and the purposes for which this exception was enacted."

29 B.R. at 927.

Stated differently, this Court views the obligation of the debtors to the Authority as not an "educational loan." The legislative history of § 523(a)(8) and the policy of the Bankruptcy Code requires a finding that such a loan is only an "educational loan" as to that party that received the benefits of the loan. Clearly then it is only the student-borrower who is covered by § 523(a)(8). The legislative history of § 523(a)(8) suggests this conclusion where it is stated:

> First of all, Members should be aware that nothing in the provision of law today on the Ertel amendment [student loan exception to discharge] prohibits the discharge of the non-student loan debt.

124 Cong.Rec. *supra* at 469 (statement by Cong. Erlenborn).

In summary, this Court holds that the debtors' obligation to Virginia State Education Assistance Authority should be included in the debtors' discharge that was granted in this matter on June 7, 1983, because the exception to discharge for student loans does not apply to co-makers who are not student borrowers.

Had this Court decided that the provisions of § 523(a)(8) applied to co-makers who are not students other provisions of § 523(a)(8) potentially provide relief for these debtors. Two exceptions to the non-dischargeability feature of educational loans exists. Section 523(a)(8) provides that all such loans are nondischargeable:

> ... unless—

> (A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. § 523(a)(8).

■ An analysis pursuant to § 523(a)(8)(A) is a rather mechanical one and one that is well settled in the Eastern District of Virginia. A debtor's obligation on a student loan is dischargeable if the original loan first became due more than five years before the filing of the debtor's petition in bankruptcy.

■ In the instant matter, both parties agree that the debtor's obligation to the Authority became due, at the latest, in either May or June of 1976.[2] The debtors filed bankruptcy in this Court on January 24, 1983. Although the student loans were consolidated into an installment note on November 27, 1978, the law in this District is clear that for purposes of § 523(a)(8)(A) the relevant date is the date the original note first became due and not the date on which subsequent obligations concerning the same loan first became due and payable unless there was a suspension of the repayment period. *In re Brown*, 4 B.R. 745, 746 (Bankr.E.D.Va.1980); *In re Ziglar*, 19 B.R. 298, 300 (Bankr.E.D.Va.1982). (Although the evidence is meager it appears that the note of November 27, 1978 was a mere consolidation of the several prior loans and not a suspension of the repayment period.) Thus, it would appear that the debtors' obligation to the Authority would be dischargeable in bankruptcy even if the provisions of § 523(a)(8) were applicable to them as non-student co-makers.

■ It also appears that, even if § 523(a)(8) applies to the debtors in this proceeding, the debt to the Authority is dischargeable on the basis of undue hardship. 11 U.S.C. § 523(a)(8)(B). A finding of undue hardship must, turn on the specific facts and circumstances of each case. *In re Birden*, 17 B.R. 891 (Bankr.E.D.Pa. 1982). Among the relevant factors are the debtors' employment status, future earning potential, expenses in relation to income, medical problems or burdensome medical expenses, and other extraordinary expenses as well as the debtors' good faith. *See In re Lezer*, 21 B.R. 783 (Bankr.N.D.N.Y.1982); *In re Albert*, 25 B.R. 98 (Bankr.N.D.Ohio 1982).

In the instant matter, Mr. Washington is a truck driver earning weekly approximately $194.00 to $201.00, however, his employment has been unstable due to a back problem and in 1983 a ruptured appendix. Mrs. Washington worked occasionally as a substitute teacher but has not been called since 1982. However, she has looked diligently since that time for other work although without success.

The evidence also reveals that the debtors are living at a poverty level. Their itemized monthly expenses totaling $791.00 appear reasonable and do not include expenses for clothing, medical expenses or insurance. In addition, their expenses did not include a mortgage or rent payment. Thus, even when Mr. Washington works full-time it would appear that the debtors cannot meet their monthly expenses.

The prospect of their income improving is not good. Considering Mr. Washington's medical problems and his age, the debtors do not appear to have a likelihood of improving their income. Finally, the evidence before the Court demonstrates that the debtors have sought relief in bankruptcy in good faith. The debtors have complied with the requirements of the Bankruptcy Code and testified fully and earnestly in this action. Nor have the debtors dealt with the Authority in bad faith. In fact, they made six payments totaling $450 to the Authority before finally filing for relief in bankruptcy. (*See* Exhibit 1 to Authority's answer). With these observations in mind and in light of this Court's ruling herein relating to the lien avoidance action affecting their residence, it appears that requiring the debtors to pay the obligation to the Authority would impose an undue

---

**2.** The parties agree on this point (*see* "Plaintiff's Brief" at 3 and "Trial Brief of Defendant" at 1) even though the plaintiff's complaint reveals that a note was signed on September 27, 1976.

hardship on them and, therefore, the obligation should be discharged.

Also before the Court in this matter is whether the debtors may avoid the fixing of a judicial lien on property of the debtors that would otherwise be exempt under applicable state law. In particular, the debtors seek pursuant to § 522(f)(1) to avoid the Authority's judgment lien for $6,661.38. Section 522(f)(1) provides:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; ....

11 U.S.C. § 522(f)(1). Thus, the debtor may avoid a judicial lien pursuant to § 522(f)(1) to the extent that it impairs an exemption.

■■■ Virginia has opted out of the federal exemption scheme, *Va.Code* § 34–3.1 (Cum.Supp.1983). Therefore, in timely filing homestead deeds in the county in which their real property is located, the debtors properly exempted $10,000.00 of interest in their property and residence located in Northumberland County. See *Va.Code* § 34–6 (Repl.Vol.1976). A judgment lien is clearly a judicial lien. To the extent that such lien impairs the $10,000.00 exemption properly claimed by the debtors in their residence the debtor may avoid such lien. However, if the debtors have no equity in the property, such as if the balance due on an obligation secured by a first deed of trust exceeds the value of the property, then although the exemption is properly claimed there is no equity to which the exemption may attach and, therefore, no exemption is impaired by the Authority's lien. *In re Canady,* 9 B.R. 428, 431 (Bankr.D.Ct.1981).

■■■ The fair market value of the debtors' property is the proper value to be used in determining whether an exemption is impaired by a creditor's lien. *In re Cohen,* 13 B.R. 350, 353 (Bankr.E.D.N.Y.1981). The only credible evidence before the Court was that of Robert Granger, a duly qualified real estate appraiser, who testified that the fair market value of the property is $10,600.

■■■ The parties have failed to introduce evidence as to whether any prior, unavoidable liens exist on the debtor's residence (which is the property that the Authority's lien encumbers and that is the subject of the debtor's lien avoidance motion). If a prior, unavoidable and valid deed of trust exists on the property in excess of its fair market value, then as discussed above, this Court must deny the plaintiff's motion for lien avoidance because without equity in the property the Authority's lien would not impair the debtors' claimed exemption. Anomalously, because of the result that ensues the debtors argue that the Court should take judicial notice of the existence of a $34,000 first deed of trust and the Authority argues that the Court cannot permissably so take judicial notice. It is the opinion of this Court that the Court may exercise its discretion to take judicial notice of the bankrupt's schedules in an adversary proceeding arising from the same bankruptcy case. *Matter of Claxton,* 32 B.R. 219, 223 (Bankr.E.D.Va.1983).

The schedules reflect the existence of the deed of trust on the exempted property. It also reflects an unpaid balance of $34,000 on the obligation secured by that lien. The Authority's answer to the complaint also avers the existence of the $34,000 first deed of trust. The clear and compelling evidence is that the real estate has a value not in excess of $10,600, and, therefore, the debtors have no equity in the property.

It is only the debtor's equity, if any, in the property in question over and above valid liens which is capable of supporting an exemption under Code § 522. Having no interest in the property in question to which the debtors' asserted exemptions could attach, the plaintiff's judicial lien does not therefore impair any exemption that might have otherwise existed. Accordingly, Code 552(f) offers no comfort to the debtors. (Citations omitted).

*In re Canady,* 9 B.R. at 431.

■■■ The Court of Appeals for this circuit in remanding to the bankruptcy court

for a finding of valuation made the following comment in *In re Fitzgerald:*

> The fair market value of the property is an important factor in determining how to treat a judgment lien under § 522(f), because the extent to which the lien impairs a valid exemption depends on the amount of the debtor's equity in his property. The debtor's equity is the value of the property less any unavoidable mortgages on the property.

729 F.2d 306, 308 (4th Cir.1984). It is clear that an equity must exist over unavoidable liens before the debtors can seek application of the avoiding provisions of § 522(f).

 From these findings this Court is compelled to find that because the debtor has no equity in said real estate over and above unavoidable liens the defendant's lien does not impair the debtor's exemption of $10,000 appropriately claimed under § 34–4 *Code of Virginia,* 1950, as amended.

Although this Court shall make a finding that the debt is dischargeable in bankruptcy, it must also find that the debtors are not able to avoid the judgment lien by application of 11 U.S.C. § 522(f). In addition, this Court having agreed previously to lifting the stay imposed by 11 U.S.C. § 362 to allow the defendant to proceed with its creditors bill in the state circuit court (Adversary Proceeding No. 83–0044–R), any further injunctive relief should be denied, even though it may be clear that the superior $34,000 lien obligation will deprive the defendant Authority of any benefits from the sale.