Franklin Drake, Smith, Debnam, Hibbert & Pahl, Raleigh, NC, for USA Funds, Inc.

Donald A. Davis, Raleigh, NC, for debtor.

In re Stephanie WALCOTT, Debtor.

Stephanie WALCOTT, Plaintiff,

v.

USA FUNDS, INC., Defendant.

Bankruptcy No. 94–00376–5–ATS.
Adv. No. S–94–00121–5–AP.

United States Bankruptcy Court,
E.D. North Carolina.

Aug. 25, 1995.

## MEMORANDUM OPINION

A. THOMAS SMALL, Bankruptcy Judge.

The trial of this adversary proceeding to determine whether the chapter 7 debtor, Stephanie Walcott, is entitled to discharge her student loans with the defendant, USA Funds, Inc., pursuant to 11 U.S.C. § 523(a)(8)(B) was held in Raleigh, North Carolina, on August 9, 1995.

### JURISDICTION

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I) which this court may hear and determine.

### FACTS

This action was initiated by the filing of a motion by the debtor. However, the parties agreed that this motion would be tried as an adversary proceeding and that the motion would serve as the complaint.

The chapter 7 debtor, Stephanie Walcott, is a 28–year–old woman who is intelligent,

articulate, healthy, and without dependents. She is educated, has some experience teaching literacy to adults, a job she enjoys, and she has prospects of advancing in that field. Unfortunately, since she graduated from college in May of 1991, she has only had one job that was a full-time position, and it lasted only three months.

Ms. Walcott maintains that despite her concerted efforts, she has been unable to obtain employment sufficient to repay her student loans, that repayment of her loans to USA Funds, Inc. would be an undue hardship, and that her educational loans should be discharged pursuant to 11 U.S.C. § 523(a)(8)(B). USA Funds, Inc. contends that Ms. Walcott should try harder and that her student loans should not be discharged.

The debtor has tried for four years to find employment that would enable her to repay her student loans without undue hardship.[1] Ms. Walcott graduated from St. Andrews Presbyterian College in May 1991, with a B.A. in English. While in college, she applied for and obtained from the defendant, USA Fund, Inc., four guaranteed student loans, totaling over $11,000, with a current outstanding balance of over $14,000. These loans represented approximately one fourth of the total cost of Ms. Walcott's college education. After her May 1991 graduation, Ms. Walcott moved to Raleigh and began to search for employment. Initially, she applied for professional positions, but was told that she was under qualified. She then broadened her search and applied for positions as a salesperson, a restaurant hostess, a hotel desk clerk, a secretary, a child care provider and a temporary worker. She was consistently turned down for either lack of experience or over qualification. Ms. Walcott also registered with a nanny service and utilized the services of the North Carolina Employment Security Commission.

In August of 1991, Ms. Walcott got a job setting up appointments for vacuum cleaner salespeople. This job paid $5.00 per hour

and was for only 20 hours per week. Ms. Walcott quit after one month when her paycheck bounced. In September 1991, she was employed by the North Carolina Wildlife Federation soliciting pledges from members, but was fired after two weeks for her inability to get members to place their pledges on credit cards. Ms. Walcott then took a job with her mother's real estate company working only on Fridays, cleaning three condominiums for $90. This job required her to drive two hours each way, but she spent Monday through Thursday searching for other employment.

In November of 1991, Ms. Walcott had a job during the Christmas season for 40 hours per week at $4.90 per hour as a stockroom handler for J.C. Penney Co., Inc., and in December she returned to cleaning condominiums on Fridays for her mother's company. In January of 1992, Ms. Walcott got a two week trial as a reporter at the Wake Weekly at $6.00 per hour for 20 hours per week. Unfortunately, she was fired on her first day for no apparent reason. Later that same month, Ms. Walcott secured a job distributing flyers at apartment complexes for the National Consumer Credit Guarantee Association (NCCGA) at $5.00 per hour and 20 hours per week. Subsequently, the same company offered her a position setting appointments and answering phones for $5.50 per hour and 40 hours per week. In June 1992, she received a raise to $6.00 per hour, but the following month her hours were reduced to 30 per week, and she was laid off in October 1992 due to NCCGA's financial difficulties.

Starting in October 1992, Ms. Walcott combined 20 hours per week (at $4.75 per hour) working at the information desk at a shopping center with 15 hours per week (at $5.00 per hour) aiding a blind man. She maintained this combination of jobs until November 1992 when she obtained a position with Measurement, Inc. grading the essay por-

---

1. The debtor testified concerning her efforts to find employment after graduating from college, in general terms. The specifics of her employment history are documented in her complaint. Although no evidence was offered at trial to corroborate much of her employment history, the court does not believe the defendant disputes the efforts Ms. Walcott describes in her complaint. In any event, the court finds that the efforts she described are not sufficient to warrant a discharge of her student loans.

tions of standardized tests. Measurement, Inc. paid Ms. Walcott $7.25 per hour for 32.5 hours per week, eight months of the year. In addition to her work at Measurement, Inc., Ms. Walcott maintained a $5.50 per hour part-time job with Coleman Research from July 1993, to June 1994. She also took two computer courses from Wake Technical College and continued to look for better jobs during this time. Ms. Walcott filed for chapter 7 relief in March of 1994, and in July of 1994, at the time of her initial motion to discharge her student loans to the defendant, Ms. Walcott's income was approximately $898 per month against monthly living expenses of over $945 per month.

Shortly after the filing of her July 1994 motion which served as the complaint in this adversary proceeding, Ms. Walcott left Measurement, Inc. and spent approximately two weeks searching for work in Charlotte, North Carolina, where she had heard that jobs were plentiful. While in Charlotte she applied for a number of jobs, but without sufficient funds, a Charlotte job offer, or a place to stay, she was forced to move back into her parents' home in Laurinburg, North Carolina.

Although she desires to live by herself, the debtor has continued to live with her parents since August of 1994 for obvious financial reasons. Ms. Walcott pays her parents $100 per month, and other than paying for her own long distance telephone calls and occasionally bringing home a few items from the grocery store, this is her total monthly expense for rent, food, and utilities. All of her monthly expenses, including the $100 payment to her parents, total approximately $500. This includes a $200 per month payment on a 1993 pickup truck that she recently purchased to replace an older vehicle.

On February 8, 1995, after applying for 38 more jobs, Ms. Walcott secured a part-time contract job teaching literacy classes at the satellite center of Richmond Community College which is 12 miles from her parents' home in Laurinburg. She is only guaranteed twelve and one half hours per week at the rate of $9.00 per hour. This is the highest hourly wage she has ever earned, but her schedule varies widely. Until June, she worked only the twelve and a half hours, but increased to sixteen hours per week in June, and is currently working 25 hours per week. In the four years since she graduated, despite her litany of attempts, she has never had a full-time job, except for the 3 months she was fully employed with NCCGA in 1992. She testified that she is very happy with her current work at Richmond Community College and is hopeful that it may become a full-time, possibly salaried, position in the future. Ms. Walcott stressed that this was very uncertain, and much depends upon enrollment and the continuation of a nearby factory's "work-placed" literacy program.

In addition to her literacy instruction job at Richmond Community College, Ms. Walcott is also currently able to do telemarketing work a few hours per week at $5.00 per hour with a $50 per sale commission. Since she has been living with her parents, the debtor was able to sell her 1986 automobile with high mileage for $200 and purchase a 1993 pickup truck for a $500 down payment and $200 monthly payments.

As of the end of 1994, the defendant, USA Funds, had a $14,228.80 outstanding loan balance. Graduates are expected to begin repaying such loans starting six months after graduation. However, Ms. Walcott sought and received from USA Funds a series of deferments that extended her obligation to begin making loan payments until early 1994. Shortly after being informed that she had reached the end of her entitlement to any further deferments, Ms. Walcott filed her chapter 7 petition. From her May 1991 graduation until the present, the debtor has made only one $50 payment to USA Funds.

When she filed her chapter 7 petition, Ms. Walcott had no secured debts and only $6,059 in other, non-educational, loans. Ms. Walcott was granted a discharge of all her debts other than the one to USA Funds on June 17, 1994. Ms. Walcott concedes that she has no physical or mental disabilities that prevent her full employment. She also has no dependents and is only responsible for her own support.

Ms. Walcott has family in Indianapolis, but she is not interested in working there be-

cause she says that it is too cold. She is also not interested in pursuing a job which could not become a position paying at least $12,000 per year or more. Other than the fact that her family, boyfriend, and friends are in the Laurinburg area, there is no reason she must stay in that location. She has not explored the possibility of seeking a literacy instruction position with a community college in any of the State's other 99 counties, and she has not pursued public school employment opportunities.

## ANALYSIS AND CONCLUSIONS

Section 523(a)(8)(B) of the Bankruptcy Code, under which Ms. Walcott seeks to discharge USA Funds' loans, reads as follows:

a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(8) for an educational ... loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend *unless*—

(A) such loan ... first became due before more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an *undue hardship on the debtor* and the debtor's dependents;

11 U.S.C. § 523(a)(8) (emphasis added).

When it is appropriate to discharge student loans, pursuant to the "undue hardship" exception, prior to the 7 years proscribed by Congress is an increasingly important issue given the bleak job outlook facing many of the nation's recent college graduates. The Fourth Circuit has not addressed the issue of what properly constitutes an "undue hardship" for the purposes of § 523(a)(8)(B), but

other courts have formulated a variety of standards.[2]

For example, the Eighth Circuit held that a hardship discharge under § 523(a)(8)(B) should not be granted unless a debtor could not repay the loan without giving up a minimum standard of living. *In re Andrews,* 661 F.2d 702 (8th Cir.1981). The court in *Andrews* held that a bankruptcy court should consider the debtor's present employment and prospects and should make findings regarding the debtor's reasonable living expenses in order to determine if repayment would require the relinquishment of such a minimal standard of living. *Id., accord, Cheesman v. Tennessee Student Assistance Corp.,* 25 F.3d 356 (6th Cir.1994). The Second Circuit uses a three prong test which has also been adopted by the Seventh Circuit. *Brunner v. New York State Higher Educational Services Corp.,* 831 F.2d 395 (2nd Cir.1987); *In re Roberson,* 999 F.2d 1132 (7th Cir.1993). The *Brunner* test requires a demonstration that (1) the debtor cannot maintain a minimal standard of living based on current income and expenses if forced to repay the loans; (2) additional circumstances exist that show this situation will likely continue for a significant portion of the loan repayment period and (3) "the debtor has made good faith efforts to repay the loans." *Brunner v. New York State Higher Educational Services Corp.,* 831 F.2d 395, 396 (2nd Cir.1987).

The *Brunner* test's second prong requires not merely a present inability to pay, but the existence of exceptional circumstances suggesting "the certainty of hopelessness." *In re Roberson,* 999 F.2d 1132, 1136 (7th Cir. 1993) (citations omitted). Many courts have held that the third prong of the *Brunner* test, good faith, cannot be demonstrated unless the debtor has made an effort to repay the student loans. *See, e.g., Malloy v. United States (In re Malloy),* 144 B.R. 38, 42 (Bankr.E.D.Va.1992). In the *Brunner* case itself, Ms. Brunner's student loans were held to be nondischargeable in part because she had filed for their discharge within a month

---

**2.** *See generally,* 3 Lawrence P. King, Collier on Bankruptcy ¶ 523.18 and accompanying notes

(15th ed. 1995).

of the date that the first payment became due. *Brunner v. New York State Higher Educational Services Corp.,* 831 F.2d 395, 397 (2nd Cir.1987).

A survey of the facts behind the case law regarding § 523(a)(8)(B) reveals many heart-rending stories. The debtor in *In re Reilly* was a divorced mother of three young children whose ex-husband was incurably ill and could not contribute to the support of his family. *Reilly v. United Student Aid Funds, Inc. (In re Reilly),* 118 B.R. 38, 41 (Bankr. D.Md.1990). The debtor was working both a full-time and a part-time job, living with her parents at minimal rent, and still could not cover her family's monthly expenses. *Id.* In *In re Malloy,* the debtor had $90,000 in student loans resulting from a failed attempt to complete medical school. *Malloy v. United States (In re Malloy),* 144 B.R. 38, 39–40 (Bankr.E.D.Va.1992). His expenses included only $200 per month in rent, no allowance for clothing, and no car or health insurance payments. He was also afflicted with a stutter. *Id.*

The issue in the present case is a close one. Ms. Walcott has made a substantial effort to find employment that would allow her enough income to repay her student loans. On the other hand, since moving in with her parents, she has limited the scope of her search. Nevertheless, her current prospects appear brighter than at nearly any other time since her graduation. Ms. Walcott is very articulate, has no disabilities or dependents, has family support, has an education, has some experience teaching literacy, and has the prospect of advancing in that field. Ms. Walcott does not suffer from any extraordinary circumstances. Additionally, her chapter 7 petition was filed largely to discharge her student loans and was filed shortly after she ran out of deferments and was required to begin repaying these loans. In the four years since she has graduated, she has made only one $50 payment towards these loans. She testified that her personal phone calls run anywhere from $25 to $40 per month.

The question is whether the effort that the debtor has expended up to now, and her lack of success so far, are sufficient to make the nondischarge of USA Funds' loan an "undue hardship." Based on all the facts and a review of the case law, the court concludes that the repayment of her student loans is not an undue hardship. While the repayment of these loans may impose a hardship on the debtor now, it is not "undue," nor will it necessarily continue for the entire repayment period of these loans.

Consequently, the plaintiff has not met her burden of demonstrating that her debt to USA Funds, Inc. is dischargeable pursuant to 523(a)(8)(B).

USA Funds, Inc. is entitled to a judgment against Ms. Walcott for the full amount of her student loans. Ms. Walcott has no assets from which a judgment could be satisfied, and, presumably, USA Funds, Inc. and Ms. Walcott will be able to arrive at a repayment plan for the payment of her indebtedness.

An appropriate judgment will be entered.

### JUDGMENT

This adversary proceeding to determine the dischargeability of a debt was tried on August 9, 1995, and the court's findings of facts and conclusions of law are set forth in a memorandum opinion entered this date. Based on the findings of fact and conclusions of law set forth in the memorandum opinion,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the debtors' liability on her obligations to USA Funds, Inc. is NONDISCHARGEABLE.

**FURTHERMORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the defendant, USA Funds, Inc., shall recover from the debtor, Stephanie Walcott, the sum of $14,228.80 plus interest at the rate of 5.89% from the date of this judgment until paid in full.