In re Robert Joseph AMMIRATI, and
Roseann Marie Ammirati,
Debtors.

Robert Joseph AMMIRATI, and Roseann
Marie Ammirati, Plaintiff–Appellees,

v.

NELLIE MAE, INC., and The Ed-
ucational Resources Institute,
Defendants–Appellants.

Civ. A. No. 4:95–337–22.

United States District Court,
D. South Carolina,
Florence Division.

Sept. 28, 1995.

Robert Joseph Ammirati and Roseann Marie Ammirati, pro se.

John Robert Lester, Columbia, SC, for defendants-appellants.

## ORDER

CURRIE, District Judge.

This case is before the court on appeal from the United States Bankruptcy Court. This court has jurisdiction to review the final judgment of the Bankruptcy Court under 28 U.S.C. Section 158(a). Appellants argue that the Bankruptcy Court erred in discharging the bulk of Appellee's student loan as an "undue hardship" under 11 U.S.C. § 523(a)(8)(B).[1]

### FACTS AND PROCEDURE BELOW

From July 1990 through May 1992, Mr. Robert J. Ammirati ("Debtor") borrowed $60,000 in aggregate principal amount from Appellant Nellie Mae, Inc.[2] Appellant The Educational Resources Institute, Inc. ("TERI"), a nonprofit institution, guaranteed the loan.

Mr. Ammirati began to experience financial and health setbacks in the early 1990s. He was unemployed for a ten-month period from December 1992 through October 1993. Nevertheless, he continued to make partial payments on the loans through September 1993. In 1994, Mr. Ammirati and his wife filed for bankruptcy and commenced an adversary proceeding under Chapter 7 of the Bankruptcy Code to discharge the student loans under 11 U.S.C. § 523(a)(8)(B).[3] The Bankruptcy Court ruled that Mr. Ammirati's debt, with the exception of $9,200, was dischargeable.

### JUDGMENT OF THE BANKRUPTCY COURT

#### A. Legal Conclusions

The Bankruptcy Court noted that "undue hardship" is not defined in the Bankruptcy Code and turned to case law in an effort to determine the applicable "undue-hardship" standard. Based on its review of the case law, the Bankruptcy Court examined the "totality of circumstances" facing the debtor. Transcript of Continued Trial, *In re Ammirati*, No. 94-72609 (Bankr.D.S.C. Dec. 5, 1994) at 9-10 (hereinafter Bankruptcy Or-

---

1. Section 523(a)(8)(B) of the Bankruptcy Code states, in part:

 A discharge under ... this title does not discharge an individual debtor from any debt—
 ....
 (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—
 (A) such loan ... first became due more than 7 years ... before the date of the filing of the petition; or
 (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependants....
 11 U.S.C. § 523(a)(8)(B).

2. We note that courts differ on the issue of whether or not a non-student borrower must meet the heightened discharge standard provided in § 523(a)(8)(B). *See In re Washington*, 41 B.R. 211, 214 (Bankr.E.D.Va.1984) (exception to dis-

 charge for student loans does not apply to co-makers who are not student borrowers); *but see In re Pelkowski*, 990 F.2d 737, 740 (3d Cir.1993) ("the language and structure of [§ 523(a)(8)] reveal no intent to restrict its reach to student debtors").

 In this case, however, Debtor is the primary obligor, not a co-borrower. Mr. Ammirati signed each note on the "Borrower" signature line. Signature lines provided for "Co-Borrowers" were left blank. Mr. Ammirati's son, Domenick Ammirati, whose education was funded with the loan proceeds, signed the notes only on the "Student Signature" line. Robert Ammirati does not contest § 523(a)(8)(B)'s applicability in this appeal. In any case, because the court determines that Debtor meets the higher discharge standard, the argument is academic.

3. Although both Mr. Ammirati and his wife filed as debtors, only Mr. Ammirati signed the notes at issue. The Bankruptcy Court's discharge of liability for Mrs. Ammirati is not at issue in this appeal. Therefore, this court will refer to Mr. Ammirati as the sole debtor in this proceeding.

der). It noted that in order to meet the undue-hardship standard those circumstances must be both extraordinary and non-temporary, with the essential inquiry focusing on the debtor's ability to maintain a minimal standard of living for himself and his dependants if forced to repay his student loans. *Id.* at 10. Although the Bankruptcy Court did not cite specific cases, it appears to this court that it applied the standards adopted by the Second Circuit in *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395 (1987).

In *Brunner,* the court held that in order to justify an undue-hardship discharge, the debtor must demonstrate:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependants if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* at 396. For reasons set forth below, this court holds that the *Brunner* test sets forth the proper standard for determining undue hardship under § 523(a)(8)(B) and will apply that test in reviewing the ruling of the Bankruptcy Court.

B. *Findings of Fact*

 The Bankruptcy Court found that Debtor's after-tax income is approximately $3,800.00 with expenses of approximately $4,350.00,[4] and that his assets include a home valued at $220,000.00 with approximately $208,000.00 in liens and an $8500.00 car with a $7,000.00 lien. Debtor's dependants include a wife and granddaughter, both of whom have health problems. The Bankruptcy Court determined that Debtor had taken considerable steps to minimize expenses, had done everything possible to obtain better em-

ployment and was maintaining a steady income despite health problems. *Bankruptcy Order* at 11. It also found that there was little chance that Debtor's financial status would improve and that he had acted in good faith in attempting to repay the loan. *Id.* at 12.

## APPELLANTS' ARGUMENT

Appellants do not urge this court to adopt a specific undue-burden test, but argue that the central inquiry in any such test turns on the issue of maintenance of a minimal living standard after maximizing income and minimizing expenses. Appellants argue that a determination of what constitutes a minimal standard of living should be made by comparing Debtor's current income level with the poverty guidelines established by the Department of Health and Human Services, and note that Debtor's income is currently $40,-000 over the applicable poverty level. Appellants urge this court to hold that Debtor cannot pass any undue-hardship test unless his income level is at or below the poverty level.

In the alternative, they argue that because Debtor's income is in excess of the poverty level, he should be forced to demonstrate unique or extraordinary circumstances to justify discharge of his student loan. Appellants contend that the only evidence Debtor presented in support of such circumstances was the poor health of himself and his dependants. Thus, they conclude that the Bankruptcy Court erred in finding that Debtor would be unable to sustain a minimal standard of living if forced to repay his student loans. Appellants also argue that Debtor has failed to satisfy his burden of showing undue hardship because he has not minimized his expenses. Specifically, they note that if Debtor sold his house he would reduce his living expenses considerably. They also argue that because Debtor is currently considering retirement, which would significantly

4. The Bankruptcy Court expressed some doubt about this figure. Specifically, Debtor claimed medical expenses of $455.00 a month that the Bankruptcy Court did not find fully supported in the record. The Bankruptcy Court did, however, find Debtor's evidence credible on the whole. *Bankruptcy Order* at 15. In his brief, Debtor-

Appellee attempted to introduce evidence of higher monthly medical expenses. As this evidence was not made a part of the record below, this court is unable to consider it on appeal. *See Commercial Credit Corp. v. Reed,* 154 B.R. 471, 474 (E.D.Tex.1993).

reduce his income, he cannot be found to have maximized his income.

In summary, Appellants contend that under any judicial standard for determining undue hardship, a debtor must demonstrate that unless his loans are discharged, he will be unable to maintain a minimal standard of living for himself and his dependants. They argue that minimal standard of living should be defined as an income at or below the poverty level. At the very least, if a debtor's income exceeds the poverty level, he should be forced to demonstrate unique or extraordinary circumstances justifying discharge and show that he has taken all reasonable steps to minimize expenses and maximize income. Appellants do not dispute the Bankruptcy Court's findings that there is little chance that Debtor will be able to find higher-paying work and that he has consistently acted in good faith in attempting to repay his loans and in ultimately seeking their discharge.

## OPINION OF THIS COURT

### A. Adoption of the Brunner Standard

■ Congress did not define "undue hardship" when setting forth the discharge standard of § 523(a)(8)(B). *Brunner*, 831 F.2d at 396. Therefore, courts have considered a multitude of factors and employed various tests when considering undue-hardship discharge petitions. A review of the case law indicates that the Fourth Circuit has not yet adopted an undue-hardship standard, but that the two leading judicial standards for determining undue hardship are found in *Brunner* and *In re Johnson*, 5 Bankr.Ct.Dec. (CRR) 532 (Bankr.E.D.Pa.1979).

The *Johnson* test is a complex one that requires the court to employ a policy test under which it must ask whether the percentage of the student loan to total indebtedness, when considered in combination with the employment prospects of Debtor, indicates either that the dominant purpose of the bankruptcy proceeding was to discharge the student debt or that the debtor definitely benefitted from the education that the loan helped to finance. *Johnson*, 5 Bankr.Ct.Dec. at 544. This court finds this test to be overly complex. *See Sands v. United Student Aid Funds, Inc.*, 166 B.R. 299, 306 (Bankr. W.D.Mich.1994) (rejecting *Johnson* as "hideously complicated"); *Bryant v. Pennsylvania Higher Educ. Assistance Agency*, 72 B.R. 913, 915 n. 2 (Bankr.E.D.Pa.1987) (rejecting *Johnson* as overly subjective and unfortunately complicated). This court also disagrees with the policy prong of the *Johnson* test. Determining the value of an education is both subjective and inappropriate. The debtor is not entitled to an undue-hardship discharge by virtue of selecting an education that failed to return economic rewards. *See In re Roberson*, 999 F.2d 1132, 1137 (7th Cir.1993) ("If the leveraged investment of an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the decision to borrow.")

*Brunner* has been applied in lower court cases within this circuit. *See Commonwealth of Virginia State Educ. Assistance Authority v. Dillon*, No. 94–0685–R, 1995 WL 701382, 1995 U.S.Dist. LEXIS 5937 (W.D.Va. March 9, 1995); *Walcott v. USA Funds, Inc.*, 185 B.R. 721 (Bankr.E.D.N.C.1995).[5] It also appears that the national trend is toward adoption of the *Brunner* standard. *See In re Roberson*, 999 F.2d 1132 (7th Cir.1993), *In re Healey*, 161 B.R. 389, 393 (E.D.Mich.1993) (adopting *Brunner* and noting that courts in the Second, Sixth, Seventh, Eighth and Eleventh Circuits have also done so); *In re Stebbins–Hopf*, 176 B.R. 784 (Bankr.W.D.Tex.

---

**5.** Other cases to consider the undue-hardship standard within this circuit have considered a group of relevant factors including employment status, current income required to maintain a minimal living standard, whether the debtor's skills are being used to their maximum advantage, the debtor's health and good faith. *See Wilson v. Missouri Higher Ed. Loan Authority*, 177 B.R. 246, 248 (Bankr.E.D.Va.1994); *Washington v. Virginia State Educ. Assistance Authori-*

ty, 41 B.R. 211, 215 (Bankr.E.D.Va.1984). Some have employed a case by case analysis focusing on the existence of extraordinary or unique circumstances. *See Ballard v. Commonwealth of Virginia Educ. Assistance Authority*, 60 B.R. 673 (Bankr.W.D.Va.1986); *In re Love*, 33 B.R. 753 (Bankr.E.D.Va.1983). Most of these cases were decided before *Brunner* and they all incorporate components of the *Brunner* test.

1994); *In re Lynn,* 168 B.R. 693 (Bankr. D.Ariz.1994). The *Brunner* standard is also supported by § 523(a)(8)(B)'s scant legislative history. *See Roberson,* 999 F.2d at 1135; *Brunner v. New York State Higher Educ. Services Corp.,* 46 B.R. 752, 753–54 (S.D.N.Y. 1985); *Sands,* 166 B.R. at 305–06. *Brunner* provides a clear test to apply in determining undue hardship, has been adopted by a significant number of courts including some within this circuit and is supported by the legislative history surrounding § 523(a)(8)(B). We therefore affirm the Bankruptcy Court's adoption of the *Brunner* standard.

*B. Application of the Brunner Standard*

[3–5] The Bankruptcy Court's findings of fact relevant to Debtor's claim of undue hardship are to be affirmed unless clearly erroneous. Whether or not the Bankruptcy Court's factual findings rise to the level of undue hardship under *Brunner,* however, is a question of law for this court to decide *de novo. Cheesman v. Tennessee Student Assistance Corp.,* 25 F.3d 356, 359 (6th Cir. 1994) *cert. denied* —— U.S. ——, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995); *Roberson,* 999 F.2d at 1136; *Brunner,* 831 F.2d at 396. A factual finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

■ Appellants do not contest the Bankruptcy Court's finding that Debtor has made good faith efforts to repay his loans. Nor do they argue with its conclusion that Debtor's current state of affairs, which makes it unlikely that he will be able to repay the loans, will exist for the repayment period of the loans.[6] Therefore, Debtor has satisfied prongs two and three of the *Brunner* test. We must now consider whether the Bankruptcy Court erred in concluding that Debtor carried his burden of demonstrating that if forced to repay the loans he would be unable to "maintain, based on current income and expenses, a 'minimal' standard of living for [him]self and [his] dependants." *Brunner,* 831 F.2d at 396.

■ In determining whether a debtor meets the first prong of the *Brunner* test, courts have considered numerous factors. Some have made reference to the poverty guidelines. Appellants argue that "minimal standard of living" should equate to poverty-level income. Those below pass the test, those above fail. This court, however, agrees with the Bankruptcy Court's conclusion that the two terms are not meant to be coextensive under *Brunner. Brunner* itself makes no mention of the poverty guidelines, nor do many of the cases that adopt it. *See In re Roberson,* 999 F.2d 1132 (7th Cir.1993); *In re Walcott,* 185 B.R. 721 (E.D.N.C.1995). Although reference to such guidelines would provide an objective test for determining undue hardship, this court concludes that § 523(a)(8)(B) does not call for such an analysis.

Appellants argue that in a case such as this one where Debtor's income so greatly exceeds the poverty level, he should be forced to demonstrate unique or extraordinary circumstances in order to satisfy the initial prong of the *Brunner* test. This court agrees that Debtor must demonstrate unique or extraordinary circumstances. However, this is so not because his income exceeds the poverty level, but because *Brunner* itself calls for such a demonstration. 46 B.R. at 755. *Brunner* presents examples of such circumstances, which include illness, a lack of usable job skills and the existence of a large number of dependants. *Id.* Appellants argue that the only evidence Debtor presented to support a finding of unique or extraordinary circumstances was that regarding medical expenses. This court disagrees. Debtor presented evidence of health problems suffered by himself and both dependants. He also testified as to his inability to find higher-

---

6. Appellants do state that Debtor's circumstances will be different once his home is sold, and argue that he has therefore failed to minimize expenses and is thus unable to demonstrate that discharge is required in order to maintain a minimal standard of living. Similarly, they argue that he will not be maximizing income if he chooses to retire in the near future. This court will consider these arguments as they apply to the first prong of the *Brunner* test.

income employment despite an extensive job search. The Bankruptcy Court noted that a finding of undue hardship must contemplate unique or extraordinary circumstances and found that Debtor presented evidence to satisfy that standard. Such a finding was not clear error.

As the Bankruptcy Court noted, the central factors in determining whether a debtor will indeed sustain a minimal standard of living if forced to repay his loan are the debtor's current income and expense levels. The Bankruptcy Court found that Debtor's current income is $3,800.00 with expenses of $4,350.00 and that, with the exception of selling his house, Debtor had done everything possible to minimize expenses and maximize income. *Bankruptcy Order* at 12–13. Based on the record these findings are not clearly erroneous. Although the Bankruptcy Court expressed some doubt as to the justification for certain of the medical expenses submitted by Debtor, this court notes that even if a significant portion of these expenses was eliminated Debtor's expenses would still exceed his income. Appellants, however, argue that the Bankruptcy Court erred in finding that Debtor had minimized his expenses because of his failure to sell his home. In fact, the Bankruptcy Court itself stated that Debtor will reduce his expenses to $3,200.00 per month once his home is sold. *Bankruptcy Order* at 15. Based on that figure, Debtor's income will exceed his expenses by approximately $600.00 after he sells his home.[7] They also argue that Debtor's potential decision to retire will substantially reduce his income and that he therefore will have failed to have maximized that income. Thus, Appellants conclude that the Bankruptcy Court erred in holding that Debtor passed the first prong of the *Brunner* test.

If the Bankruptcy Court had discharged Debtor's entire debt, this court would agree with Appellants' argument. In fact, the Bankruptcy Court appears to have anticipated Debtor's ability to make some payments on his student loan once his home was sold. In refusing to discharge $9,200.00 of the debt, the Bankruptcy Court stated that the undischarged amount "will carry the interest under the contracts, and that there may be collection efforts made by the creditor against this debtor, [and that] it appears to me that the debtor is unable to make any payments until such time as he makes some transition from his present housing." *Bankruptcy Order* at 17. The Bankruptcy Court's ruling did not overlook the fact that Debtor had not minimized his expenses by selling his home. In fact, it specifically noted that Debtor would be able to make payments only when that home was sold. It also based its decision on present income, being unable to discern when or if Debtor would retire. Whether or not the home is sold or Debtor retires, Appellants have an enforceable judgment against Debtor. Although that judgment falls short of the amounts called for in the original notes, it represents the Bankruptcy Court's determination of the amount that Debtor can afford to pay while still maintaining a minimal standard of living for himself and his dependants.

### CONCLUSION

This court adopts the three-part *Brunner* standard employed by the Bankruptcy Court to determine whether a debtor has demonstrated that failure to discharge his student loans would constitute an undue hardship under § 523(a)(8)(B) of the Bankruptcy Code.

This court finds that the Bankruptcy Court's factual findings as to Debtor's current income and expense levels, the likelihood of Debtor's current situation improving, and Debtor's consistent good-faith efforts toward repaying his student loans are not clearly erroneous.

This court affirms the Bankruptcy Court's decision that all but $9,200.00 of Debtor's student loans were dischargeable as an undue hardship under § 523(a)(8)(B) of the Bankruptcy Code.

SO ORDERED.

---

7. We note that a home sale will not generate substantial revenue for Debtor as his house is highly leveraged. As noted earlier, the house has liens of approximately $208,000.00 with an appraised value of approximately $220,000.00.