**In re Dorris COULSON, Debtor.**

**Vermont Student Assistance Corp., Appellant,**

v.

**Dorris Coulson, Appellee.**

**No. 1:99CV249.**

United States District Court,
W.D. North Carolina,
Asheville Division.

April 10, 2000.

Robert M. Pitts, Whalen, Hay, Pitts, Hugenschmidt, Master & Devereux, Asheville, NC, for Dorris Coulson, debtor.

David R. Hillier, Gum & Hillier, PA, Asheville, NC, Gregory A. Weimer, Little, Cicchetti & Conard, P.C., Burlington, VT, for Vermont Student Assistance Corporation, appellant.

Robert M. Pitts, Whalen, Hay, Pitts, Hugenschmidt, Master & Devereux, Asheville, NC, for Dorris Coulson, appellee.

### *MEMORANDUM AND ORDER*

THORNBURG, District Judge.

**THIS MATTER** is before the Court on appeal from the judgment of Chief United States Bankruptcy Court Judge George R. Hodges, entered November 22, 1999. For the reasons stated below, the judgment is affirmed.

### I. STANDARD OF REVIEW

■ The decision of the Bankruptcy Court is reviewed by a two-step process. Reversal of the findings of fact of the Bankruptcy Court may occur only where the findings are clearly erroneous. *In re Deutchman,* 192 F.3d 457, 459 (4th Cir. 1999). The conclusions of law of the Bankruptcy Court are reviewed *de novo. In re Hutson,* 173 F.3d 424 (table), 1999 WL 95510 at *1 (4th Cir.1999) (citing *In re Bryson Properties, XVIII,* 961 F.2d 496, 499 (4th Cir.1992)).

■ Findings of fact are clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and

firm conviction that a mistake has been committed." *In re Green,* 934 F.2d 568, 570 (4th Cir.1991) (citing *In re First Federal Corp.,* 42 B.R. 682 (W.D.Va.1984)). As stated by the Supreme Court:

> If the [lower court's] account of the evidence is plausible in light of the record viewed in it's entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as trier of fact, it would have weighed the evidence differently. When there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*In re Sherwood Ford, Inc.,* 1992 WL 295951 at *2 (D.Md.1992) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). ■ In addition, due regard must be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses. *In re Coston,* 991 F.2d 257, 262 (5th Cir. 1993).

## II. STATEMENT OF THE CASE

Dorris Coulson ("Debtor") filed a Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court for the Western District of North Carolina (No. 98–10810) on September 15, 1998. Among other debts, Debtor listed an obligation owed to Vermont Student Assistance Corporation ("Vermont") in the amount of $23,036.75.

Debtor filed adversary proceeding No. 98–1024 on December 18, 1998, asking that her obligation to Vermont be discharged because "excepting such a debt from discharge under the provisions of § 523(a)(8) would impose undue hardship on Debtor and Debtor's dependents."

Vermont timely filed an answer denying portions of the complaint and a hearing was held before Judge Hodges on September 22, 1999. Judgment was entered on November 22, 1999, discharging Debtor's indebtedness to Vermont. Vermont timely appealed the judgment and the matter is now before this Court.

## III. FINDINGS OF FACT

Having conducted a thorough review of the record, including the transcript of Debtor's testimony, the Court gives a brief recitation of the pertinent facts. A more detailed finding of facts is included in the Bankruptcy Court's Order.

Debtor currently resides in Waynesville, North Carolina, and works for the National Park Service as a Job Corps employee. She has two dependant children, aged 13 and 9, and two other children, aged 21 and 23, who are no longer her dependants. Debtor earns an annual salary of approximately $23,975 and has a monthly take home pay of about $1,620. She receives no child support for her two dependant children, although she has attempted to obtain it from her ex-husband.

Debtor's monthly expenses for her family total about $1,900 per month, including approximately $400 in additional expenses for heating, food, clothing, and medical care which she does not pay for lack of income.[1] Debtor testified she takes numerous steps to keep her monthly expenses down, including purchasing outdated food items, buying used clothing from thrift stores, and using kerosene heaters instead of electric heat in her home. She is continually in search of a better, higher paying job and has already moved her family twice in search of better wages.

While attending Southern Vermont College from 1990 through 1992, Debtor obtained student loans from Vermont totaling $15,393. Over the ensuing years, Debtor has made the minimal payments on her loans, except for authorized periods of

---

**1.** In her initial Schedule J list of monthly expenditures, Debtor listed only about $1,500 in total expenses, including $350 per month in rent, about $200 per month for food, and $20 for clothing. These amounts were some-how supposed to include herself and her two pre-teen children. She then supplemented the schedule with the additional list of necessary monthly expenses.

deferment or forbearance, and was never in default on her loans until three months prior to filing for bankruptcy. Nonetheless, the current balance on her loans stands at $23,036.75.

## IV. DISCUSSION

■ The issue before the Court is whether it would impose undue hardship on Debtor if she is not excused from her student loan obligation to Vermont. The Court agrees with Vermont that Congress has made it extremely difficult for debtors to discharge student loans. The United States Bankruptcy Code § 523(a)(8) reads in pertinent part:

A discharge ... does not discharge an individual debtor from any debt—(8) for an educational benefit, overpayment or loan made, insured or guaranteed by a governmental unit ... unless excepting such debt from discharge under this paragraph will *impose an undue hardship on the debtor and the debtor's dependants.*

11 U.S.C. § 523(a)(8)(B). Unfortunately, this section does not define the term "undue hardship," leaving it to the courts to develop and apply tests for determining whether failure to discharge student loans causes "undue hardship."

■ When determining whether a student loan obligation should be discharged because it will create an undue hardship, the court should consider: 1) debtor's current level of income and expenses and whether a minimal standard of living can be maintained by the debtor and dependants if the debtor must repay student loans; 2) additional circumstances that might suggest that debtor's current financial condition would likely continue for a significant portion of the repayment period; and 3) whether the debtor has made a good faith attempt to repay the student loans. *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2nd Cir.1987). Although the Fourth Circuit has not explicitly adopted the *Brunner* standard, district courts in this Circuit

have employed that standard in determining whether an undue hardship exists. *In re Ammirati*, 187 B.R. 902 (D.S.C.1995), *aff'd* 857 F.2d 615 (table), 1996 WL 241844 (4th Cir.1996); *Commonwealth of Virginia State Educ. Assistance Authority v. Dillon*, 189 B.R. 382 (W.D.Va.1995); *Kapinos v. Graduate Loan Center*, 243 B.R. 271 (W.D.Va.2000). *See also, In re Kasey*, 187 F.3d 630 (table), 1999 WL 476462 (4th Cir.1999) (using *Brunner* standard in unpublished decision). Based upon the existing law in this Circuit, and *Brunner's* status as the primary case defining "undue hardship," the Court agrees with the Bankruptcy Court's use of *Brunner* as the appropriate standard in this case.

■ In its November 22, 1999, Order, the Bankruptcy Court found that Debtor met all three prongs of the *Brunner* test and therefore was entitled to be excused from her student loan obligation. Specifically, the Bankruptcy Court concluded that 1) the Debtor could not maintain a minimal standard of living for herself and her dependants if forced to repay her student loan obligations; 2) Debtor's current state of affairs was likely to continue for a substantial period of time; and 3) Debtor had made a good faith effort to repay the loans. Order, at 3. After thoroughly reviewing the record, the Court can see no reason to dispute any of the Bankruptcy Court's findings of fact and furthermore agrees completely with the Bankruptcy Court's application of the *Brunner* standard to those facts. Vermont disputes the Bankruptcy Court's conclusions and raises the following arguments.

### 1. Standard of Living

The Bankruptcy Court determined that Debtor could not maintain a minimal standard of living if forced to repay her student loan obligation. Order, at 3. Vermont disagrees and points to "excessive" discretionary spending by the Debtor, the elimination of which would provide Debtor an additional $200 per month which could

be applied towards her student loan. In particular, Vermont takes issue with Debtor's monthly expenditures of $63 to repay a loan taken from her retirement fund, $28 for allowance for her two children, $27 on cigarettes, $15 on herbs and medicines, $35 on school and boy scouts, $50 on stamps and miscellaneous, and $50 on legal and tax preparation fees.[2] Vermont also challenges "extraordinary" expenditures of $228 on clothes in July 1999 and about $200 on a three-week family vacation in August 1999.

■■■ The central factors the Court must consider "in determining whether a debtor will indeed sustain a minimal standard of living if forced to repay his loan are the debtor's current income and expenses levels." *Ammirati*, 187 B.R. at 906. The debtor need not show that her income is below the poverty level to be considered a "minimal" standard of living. *Id.* Vermont's criticism of Debtor's "excessive discretionary spending" notwithstanding, the Court finds that Debtor's expenses clearly exceed her income, even though Debtor has done almost everything possible to maximize her income and minimize her expenses. Her testimony indicates her children often go without necessary dental procedures, are forced to delay the purchase of shoes, and often discontinue school and sports activities for lack of funds. Transcript of Hearing, at 22–23.

Even if the Court were so callous as to require Debtor to eliminate every single dollar of spending which was not absolutely necessary, such as allowance for her children, Debtor would still not have sufficient income to maintain a minimal standard of living while repaying her student loans. In fact, the expenditures which Vermont criticizes do nothing to raise Debtor's lifestyle above a bare minimal standard of living, and the Court would be hard pressed to consider any of those expenditures as excessive or unnecessary. The loan from her retirement fund, which she is *required* to repay on a monthly basis, was taken out to meet living expenses. *Id.*, at 37. Her expenditures for allowance, her children's school, stamps/miscellaneous, and legal fees are minuscule at best and all unavoidable. The large July expenditure for clothing was necessitated by her daughter's growth spurt prior to the school year. *Id.*, at 24. And her annual trip home to New York to visit family (and search for a better paying job) is far from out of the ordinary, as Vermont suggests. *Id.*, at 25. Based upon Debtor's testimony and her financial records, the Court affirms the Bankruptcy Court's finding that Debtor meets the first *Brunner* prong.

## 2. State of Affairs Will Continue

To satisfy the second prong of the *Brunner* test, the debtor must show that this state of affairs is likely to persist for a substantial period of time. *Brunner*, 831 F.2d at 396. The Bankruptcy Court concluded that there was little likelihood of a significant improvement in her income from work or child support. Order, at 3. The Court agrees. Although Debtor is continually looking for a better job, and has demonstrated a willingness to uproot her family in order to earn higher wages, she will not likely experience significant professional growth in her chosen profession in the foreseeable future.[3] Furthermore, she remains solely responsible for her two dependant children aged 9 and 13.

---

**2.** Vermont also suggests that Debtor spends $53 per month in charitable contributions. Although the initial schedule of monthly expenditures might be interpreted that way, Debtor submitted itemized lists of expenditures for July and August 1999 which make no mention of a monthly charitable contribution. This leads the Court to believe that the expenditure in question was merely a one-

time, or infrequent, charitable gift, not a monthly expenditure.

**3.** The Court must consider that as a single mother well above 40 years of age, Debtor does not have a lengthy career ahead of her in which to advance, increase her pay, and improve her financial position.

The Court sees no reason to believe Debtor's current financial state of affairs will not persist for a substantial period of time. Vermont makes no arguments which would incline the Court to find differently.

**3. Good Faith Effort To Repay**

Finally, the debtor must show that she has made a good faith effort to repay her student loans. *Brunner, supra.* In determining whether the debtor exhibited good faith, the Court in *In re Maulin* noted:

In those instances in which the debtor cannot maintain a minimal standard of living even without repayment of student loans, the demonstration of good faith does not necessarily demand a history of payment. It does require a history of effort to achieve repayment, such as when a borrower diligently uses a deferment period to attempt the reorganization of her financial affairs.

190 B.R. 153, 156 (Bankr.W.D.N.Y.1995). In this case, from the time she was graduated from college until three months prior to filing for bankruptcy, Debtor was never in default on her loans. She always made the minimal payment unless she had agreed upon a deferment or forbearance period. For a significant period of time, Debtor was paying about $75 dollars per month to Vermont, all while supporting at least 2 (and initially 4) dependant children by herself. The Bankruptcy Court found that such a showing sufficiently demonstrated Debtor's good faith in dealing with Vermont. Order, at 3. The Court agrees with that conclusion.

Vermont suggests that a fatal absence of good faith exists because during those seven years, Debtor never made more than the minimal payment and stopped making payments a full three months before filing for bankruptcy. In support of that position, Vermont cites the *Maulin* case. Of all the arguments advanced by Vermont in this appeal, the Court finds this one, suggesting that Debtor lacked good faith, particularly without merit. Although the Court in *Maulin* did find the debtor in that case had not met the *Brunner* standard due to a failure to meet the good faith requirement, that debtor had paid nothing on her student loans and had not obtained any deferments. *In re Maulin,* 190 B.R. at 156–57. Those circumstances are completely different from the instant case where Debtor has diligently made payments or sought deferments for over seven years. Thus, the Court is not persuaded by Vermont's objections and finds that Debtor acted in good faith.

In summary, the Court finds none of Vermont's arguments convincing and will affirm the Bankruptcy Court's ruling. Debtor has made a sufficient showing of undue hardship under the *Brunner* standard and is therefore entitled to be excused from her student loan obligation.

**V. ORDER**

**IT IS, THEREFORE, ORDERED** that the judgment of the Bankruptcy Court, entered November 22, 1999, is hereby **AFFIRMED,** and the Appellant's appeal therefrom is hereby **DISMISSED.**

This matter is remanded to the Bankruptcy Court for such further proceedings as it may deem necessary.