**In re Lynn Denise REILLY, Debtor.**

**Lynn Denise REILLY, Plaintiff,**

v.

**UNITED STUDENT AID FUNDS, INC., Defendant.**

**Bankruptcy No. 88–5–1200–JS.**
**Adv. No. A89–0333–JS.**

United States Bankruptcy Court,
D. Maryland.

Aug. 31, 1990.

Mark K. Cohen, Law Offices of Melvin G. Wachs, Baltimore, Md., for plaintiff.

Edward J. Friedman, Columbia, Md., for defendant.

## MEMORANDUM OPINION DISCHARGING STUDENT LOANS

JAMES F. SCHNEIDER, Bankruptcy Judge.

At the conclusion of the hearing on the instant complaint to discharge student loans, the Court informally opined that the debtor could not discharge student loans which became due less than five years before the filing of her bankruptcy petition without having made any payments. The Court concluded that the debtor had failed to establish the necessary element of good faith which is required for the discharge of student loan obligations which became due within five years of the date of filing bankruptcy. Nevertheless, the parties were invited to submit post-trial briefs before the entry of a formal, written order. The Court has reviewed the memoranda and has concluded that the student loans in this case *are* dischargeable.

Paragraph (B) of Bankruptcy Code Section 523(a)(8) permits an exception to the nondischargeability of student loans. The exception exists when repayment of the student loan would impose an undue hardship on the debtor. The "hardship" provision of § 523(a)(8)(B) is

> discretionary with the bankruptcy judge who will have to determine whether payment of the debt will cause undue hardship on the debtor and his dependents thus defeating the "fresh start" concept of the bankruptcy laws. There may well be circumstances that justify failure to repay a student loan such as illness, incapacity or other extenuating circumstances. When the court finds that such circumstances exist, it may order the debt discharged.

3 *Collier on Bankruptcy* ¶ 523.18 (15th ed. 1989).

Courts have developed a number of tests to determine if a debtor's student loan should be discharged under § 523(a)(8)(B). In *Andrews v. South Dakota Student Loan Assistance Corporation (In re Andrews)*, 661 F.2d 702 (8th Cir.1981), the court considered whether the debtor's present and anticipated future income was sufficient to cover the debtor's reasonable living expenses. The court held that if the debtor's income is adequate to support the debtor and the debtor's dependents at a "minimal standard of living," as well as to repay the student loan, the debt cannot be discharged. *Id.* at 704.

*In Andrews*, even though debtor was a 36 year old with Hodgkins disease, divorced, and receiving no alimony, the court vacated and remanded the bankruptcy court's discharge of the debtor's student loan debts on the grounds that the determination of undue hardship required the bankruptcy court to examine the debtor's

"necessary living expenses." *Id.* at 703. Thus, the court required a subjective evaluation of the debtor's reasonable living expenses and then a determination as to whether the debtor could repay her loan out of the balance of her estimated income less reasonable living expenses. *Id.* at 704.

In denying a discharge based on undue hardship, the court in *Brunner v. New York State Higher Education Services Corporation (In re Brunner)*, 46 B.R. 752 (S.D.N.Y.1985) held that

> obtaining a discharge of student loans in bankruptcy prior to five years after they first come due requires a three-part showing: (1) that the debtor cannot, based on current income and expenses, maintain a "minimal" standard of living for himself or herself and his or her dependents if forced to repay the loans, (2) that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan, and (3) that the debtor has made good faith efforts to repay the loans.

46 B.R. at 756.

In *Brunner*, the court did not allow discharge because the debtor's master's degree in social work made it quite possible that she would get a higher paying job in the near future, enabling her to pay off her student loan while still maintaining a "minimal" standard of living for herself and because by filing for discharge within a month of when her first loan payment was due, she did not adequately demonstrate good faith in attempting to pay off her student loans. *Id.* at 758.

In *Conner v. Illinois State Scholarship Commission (In re Conner)*, 89 B.R. 744 (Bankr.N.D.Ill.1988) the court applied a test which considered (1) whether the debtor had the ability to pay off the student debt and still maintain a minimal standard of living, (2) whether the debtor had made a good faith effort to pay off the loan by minimizing expenses, renegotiating the terms of the loan or finding a better job and (3) whether discharge would frustrate the legislative intent to prevent abuse of

student loans under § 523(a)(8)(B). *Id.* at 747.

The court suggested that discharge of student loans should be denied if the debtor's motivation in filing bankruptcy was solely to discharge student loan obligations. Such motivation is to be discovered by determining the percentage of debt attributable to the student loan. *Id.* at 750.

Finally, in *Bryant v. Pennsylvania Higher Education Assistance Agency (In re Bryant)*, 72 B.R. 913 (Bankr.E.D.Pa. 1987), the court developed its own test by studying the purpose of Section 523(a)(8)(B) as indicated in the Report of the Commission on the Bankruptcy Laws of the United States:

> In order to determine ... 'undue hardship'; ... the rate and amount of [the debtor's] future resources should be estimated reasonably in terms of ability to obtain, retain, and continue employment and the rate of pay that can be expected. Any unearned income or other wealth which the debtor can be expected to receive should also be taken into account. The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and his dependents at a minimal standard of living within their management capacity as well as to pay the education debt.

72 B.R. at 915 (quoting from H.R.Doc. No. 137, 93rd Cong., 1st Sess., II, 140, 141 (Appendix 2) (1973).

Thus, the *Bryant* test evaluated all sources of income, present and future, to determine whether the debtor has the ability to maintain a minimal standard of living while also repaying student loan obligations. *Id.*

Although the *Bryant* and the *Brunner* tests for determining undue hardship are similar, the *Bryant* test is more objective than *Brunner*. In *Bryant*, the test compared the debtor's income with the federal poverty guideline.[1] *Id.* at 916. If the debt-

---

1. The average annual income of a family of four at the poverty level was $12,092 in 1988. U.S.

Bureau of the Census, *Statistical Abstract of the*

or's net annual income is significantly greater than the poverty guideline, then the debtor must show the court that some "unique" or "extraordinary" circumstance exists to warrant discharge of the student loan. *Id.* at 917. Unusual responsibilities arising from the needs of dependents can be a circumstance supporting discharge. *Id.* at 918. If the debtor's net annual income is near the poverty line, then discharge may be in order. *Id.* at 917. Further, if the debtor's net annual income is below the federal poverty level, then the creditor must show that some "unique" or "extraordinary" circumstance exists to exclude the debt from discharge. *Id.* at 919. Without this showing of a special circumstance, the loan should be discharged because repayment would likely cause the debtor an undue hardship.

The *Bryant* court discharged student loans in two Chapter 7 cases based on undue hardship, while denying a discharge in a third case. In applying its objective test, the court held that the obligation of a debtor whose annual *gross* income was beneath the federal poverty guideline should be discharged because the debtor could not afford to repay her debt and still maintain a minimal standard of living, *Id.* at 921; the obligation of a debtor whose income was "significantly more" than the 1987 poverty income guideline should not be discharged because the debtor had no "unique" or "extraordinary" circumstances that would support a determination of undue hardship, *Id.* at 922; and the obligation of a debtor whose net annual income was approximately at federal poverty guidelines should be discharged because the likelihood of a higher income and better circumstances was not so clear as to constitute "unique" or "extraordinary" circumstances. *Id.* at 925.

■ Applying any one of the foregoing tests in the instant case, there is no question that the repayment of the student loans will impose an undue hardship upon this debtor. She is a divorced mother of three young children. Her former husband is incurably ill and is unable to contribute significantly to their support. The family home was sold at foreclosure and the debtor and her children were forced to move in with her parents, where she pays rent of $250 per month. Despite the fact that the debtor is employed at a full-time job and even works part-time, her monthly income is not sufficient to meet the family's necessary expenses. According to her testimony, her total monthly income (including child support) is $1,076, or $12,912 per year, which is only slightly above the 1988 poverty guideline for a family of four. There is a monthly deficit of approximately $600 of expenses over income. Because she requires approximately 24 credits in order to obtain her college degree, the debtor is not in a position to advance in her employment. The amount of student loans at issue here is small ($2,762) but imposes an inordinate burden on the debtor and her children. At this point, they are barely "getting by" with help from her parents.

■ In light of these facts, and the consequent impossibility of performance on the part of the debtor to tender payments on her student loan obligations, the Court was in error in finding that the failure to make such payments demonstrated a lack of good faith on her part. The debtor made out a very convincing case of an honest person struggling to eke out a living for herself and her children in the face of incredible obstacles. This Court was most impressed with her sincerity and her demeanor on the witness stand and is satisfied beyond a reasonable doubt and to a moral certainty that hers is that rare case in which student loans should be discharged. In so doing, the Court holds that the debtor's demonstrated inability to tender payments on a student loan which became due within five years before the filing of bankruptcy provides an exception to the rule that payments must be made in order to show good faith.[2] The Court is

*United States: 1990* (110th edition.) Washington, D.C. 1990.

2. The mere failure to make a minimal payment on a student loan obligation does not prevent a finding of good faith where debtor has never had the resources to make such a payment. *See*

**42**

satisfied that this debtor would have made all such payments if she were financially able to do so, which clearly she is not. Therefore, the student loans in this case will be discharged.

ORDER ACCORDINGLY.

*Shoberg v. Minnesota Higher Education Coordinating Council,* 41 B.R. 684 (Bankr.D.Minn. 1984); *Cossette v. Higher Education Assistance Foundation,* 41 B.R. 689 (Bankr.D.Minn.1984); *In re Birden,* 17 B.R. 891 (Bankr.E.D.Pa.1982).