**In re Danny Carl HALVERSON and Linda Jo Dowdy Halverson, Debtors.**

**Danny Carl HALVERSON, Plaintiff,**

v.

**PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, Student Loan Finance Corporation, Education Assistance Corporation, Mt. Hood Community College, and Concordia College, Defendants.**

Bankruptcy No. 95–01240–BGC–7.
Adv. No. 95–00239.

United States Bankruptcy Court, N.D. Alabama, Southern Division.

Sept. 26, 1995.

---

Wayne Wheeler, Birmingham, Alabama, for Plaintiff–Debtors.

Leon F. Kelly, Assistant United States Attorney, Birmingham, Alabama, for Defendants.

## MEMORANDUM OPINION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF STUDENT LOAN DEBT

BENJAMIN COHEN, Bankruptcy Judge.

This matter came before the Court on a Complaint to Determine Dischargeability of a Debt filed by the Debtor. After notice, a trial was held on September 13, 1995. Mr. Danny Carl Halverson, the Debtor; Mr. M. Wayne Wheeler, his attorney; Ms. Pat Comer, attorney for Pennsylvania Higher Education Assistance Agency; and Mr. Richard O'Neal, attorney for the U.S. Department of Education, appeared. Of the five named Defendants, only Pennsylvania Higher Education Assistance Agency ("PHEAA") answered. Default judgments were entered against the remaining four defendants on August 21, 1995. The United States Department of Education filed a motion for summary judgment as an unnamed party. That motion has since been withdrawn and the Department of Education, if owed a debt by this Debtor, joins PHEAA in its defense of the complaint. The matter was submitted on the testimony of Mr. Halverson and on documentary evidence as well as arguments of counsel.

The Debtor contends that a student loan debt owed to the PHEAA should be discharged in his chapter 7 bankruptcy. Section 523(a)(8) of the Bankruptcy Code excepts student loans from the discharge provisions of 11 U.S.C. § 727. The Debtor contends that his loan should be an "exception" to the subsection (a)(8) exception. Subsection (a)(8)(B) allows the discharge of student loans where the debtors of those loans prove that the payment of the loans would constitute an "undue hardship" on them.

### I.  Burdens of Proof

The PHEAA must proof the existence of a debt, owed to a governmental agency, that first became payable less than seven years prior to the date of the bankruptcy. If this burden is met, the Plaintiff must prove "undue hardship." The parties agreed that: (1) there is a student loan debt of $10,710.65; (2) the debt is owed to the governmental agency PHEAA; and, (3) the debt is due to become payable less than seven years prior to the date of the filing of this bankruptcy. Through these facts PHEAA meets its burden of proof. The burden now shifts to the Debtor to prove "undue hardship."

### II.  Issue

The single issue is whether excepting this debt from discharge will impose an undue hardship on the Debtors or their dependents. *See* 11 U.S.C. § 523(a)(8)(B).

### III.  Findings of Fact

All facts to decide this matter are before the Court. The Debtor testified that he received an associates degree in general studies from Mt. Hood College Community College in Gresham, Oregon. In 1991 he received a bachelor of science degree in health care administration from Concordia College in Portland, Oregon.[1] The loans subject to this action are the loans the Debtor received for that education.

Mr. and Ms. Halverson have been married for nine years. Mr. Halverson is employed as a technician at Lenscrafters, Inc. Although living in the metropolitan Birmingham, Alabama area, he works in Montgomery, Alabama approximately one and one-half hours away. Ms. Halverson, the co-debtor in this bankruptcy but unobligated on the student loan, works as the Director of Opera-

---

1. Mt. Hood Community College is a two-year institution founded in 1966. During the 1993–1994 academic year enrollment was 7960 with a faculty of 549. Concordia College is a four-year institution founded in 1905. During the 1993–1994 academic year enrollment was 1,017 with a faculty of 90. The World Almanac and Book of Facts at 228 (1995).

tions of the Shelby County (Alabama) Humane Society.

Mr. Halverson has two children, both from a previous marriage. One of the children, a fifteen year old girl, lives with him; the other, a twelve year old boy, lives with Mr. Halverson's former wife. Mr. Halverson is obligated to pay his former wife child support for the boy; his former wife is obligated to pay him child support for the girl.[2]

The Debtors purchased a real estate lot and constructed a house on that lot in 1992. A mortgage for approximately $65,000 was given for the project. A friend of the Debtors, the husband of a childhood friend of Ms. Halverson's, was a co-signer on the note and mortgage for the loan. Although all mortgage payments on that property are current, the Debtors were not able to make their June 1995 and July 1995 payments, and their friend and co-signer Mr. Warner Beirsdoefer, made those payments. Mr. Halverson testified that the September 1995 payment had not been made but that he expected Mr. Beirsdoefer to make that payment because Mr. Halverson and his wife were transferring the lot and house to Mr. Beirsdoefer within the week. Mr. Halverson did not expect any monetary compensation for the transfer and expected that he and his wife would pay some rent to Mr. Beirsdoefer while they continue to live in the house.[3]

Since leaving school in 1991, Mr. Halverson has had many different jobs, but he has worked regularly. He testified that since he received his degrees he has not at any time been unemployed for longer than 60 to 90 days.[4] Since 1991 Mr. Halverson has worked as a health care recruiter; as a commercial truck driver, having obtained his license for such work; as a driver and deliverer for a millworks company; as a stock person for a department store, and now as an eye glasses lens technician for Lenscrafters, Inc. With Lenscrafters Mr. Halverson expects periodic raises over the next four to six months. If he remains with the company and progresses, there is the possibility of a managerial position within 8 years.

Mr. Halverson testified about his family's current income and expenses. That testimony was compared to the Debtors' bankruptcy petition Schedules I and J listing current income and current expenditures and was also compared to answers Mr. Halverson gave to interrogatories, answers that were admitted into evidence without objection. Mr. Halverson testified that during the years preceding his bankruptcy filing he had borrowed *approximately* $7,000 to $8,000 from his father-in-law and other funds from a friend.

According to Mr. Halverson's testimony, the Debtors' combined net *bi-weekly* income is $1,500, or $39,000 per year.[5] According to their bankruptcy petition their combined net *monthly* income is $1,400 or $16,800 per year. According to the answers to interrogatories admitted into evidence, the Debtors' combined net *monthly* income is $1,765 or $21,180 per year.[6]

Neither the Debtors' petition, Mr. Halverson's answers to interrogatories, nor his testimony demonstrate that the Debtors have any unusual or out of the ordinary expenses. On their petition they list monthly expenses

2. The Debtor testified that both he and his former wife were delinquent in their child support payments, and that any federal tax refund that was due to him during the time he was delinquent, was captured by the Internal Revenue Service and applied to his support arrearage. He has not made any attempts to collect past due amounts from his former wife.

3. The Debtor testified that he recently learned that a $7,000 balloon mortgage payment would soon be due and because of that payment and the fact that he would not be able to make either the September mortgage payment or the $7,000 balloon payment, he and his wife decided to transfer the property to the co-signer, his friend.

4. The Debtor's work history indicates that although employed since leaving school, most of his jobs have not been in fields related to his degrees.

5. The Debtors' combined income for 1994, according to their petition was $24,000. Their income tax return for 1994 list gross income of $30,106.

6. In addition to his regular income, Mr. Halverson receives $89.00 per month for a 10% military disability. This amount was added into the interrogatory answer amount but not the others.

of $1,327. In answers to interrogatories Mr. Halverson lists them as $1,832.[7]

Because the Debtors are transferring their house to a friend and because this bankruptcy is one filed under chapter 7, the Debtors will not, but for the loan subject to this proceeding, have any carryover liabilities. They are not obligated on any other loans and have not reaffirmed any secured debts.[8]

The Debtors do not have any credit cards and do not have any stocks or bonds. They do not have any cash or other liquid assets saved. They own two vehicles, a 1987 Jeep and a 1989 Ford.[9] They do not have any ongoing automobile loan payments for either of these vehicles. Other than approximately $10,000 equity in their house, there are no monetary assets.[10] And while Mr. Halverson's employer maintains a retirement account for employees, Mr. Halverson has not established a balance in that account.

Health insurance is provided through Ms. Halverson's employer. Mr. Halverson's health is good with the exception of an injury suffered during active military duty which qualifies him for a governmental 10% disability, and with the exception of a back injury suffered when working as a furniture deliverer. Within the last six months, Mr. Halverson has not missed a day of work due to illness. Ms. Halverson has missed approximately 12 to 14 days in the last six months due to illness. Her health is "OK."

### IV. Conclusions of Law

Mr. Halverson's attorney explained, as the familiar saying goes, "if it weren't for bad luck, Mr. Halverson wouldn't have any luck at all." This Court is sympathetic but must find that the Debtor has the income, skills, ability and prospects to turn around his misfortunes.

Mr. Halverson contends that he does not have now, nor will have in the future, any resources to pay this student loan. He contends that his current expenses exceed his current income, that his prospects for better employment are low and that he is unable to pay this loan.

The Court of Appeals for the Eleventh Circuit has not addressed the issue of what constitutes "undue hardship" under section 523(a)(8)(B) but other circuit courts have. The frequently cited Court of Appeals for the Second Circuit test is:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

*Brunner v. New York State Higher Edu. Serv. Corp.*, 831 F.2d 395, 396 (2nd Cir.1987).

The Court of Appeals for the Sixth Circuit recently applied a variation of this test in *In re Cheesman*, 25 F.3d 356, 359–360 (6th Cir. 1994), *cert. den.* —— U.S. ——, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995). The Court of Appeals for the Seventh Circuit adopted the Second Circuit *Brunner* test in 1993 in *In the Matter of Roberson*, 999 F.2d 1132, 1135 (7th Cir.1993). The Courts of Appeals for the Eighth, Tenth and District of Columbia Circuits have not fashioned specific tests for "undue hardship" cases but recognize generally that student loans are different from other loans and to allow the discharge of them is an extraordinary remedy. *Consider*

---

7. Mr. Halverson explained the difference occurred because he and his wife had "all of their bills in front of them" when answering the interrogatories.

8. The Debtor testified that he had reaffirmed a debt on an automobile with a creditor in Portland but that the debt had been paid. In answer to interrogatory 19 admitted into evidence, the Debtor testified that he and his wife borrowed $1,300 from his father-in-law "to keep" the 1989 Ford Escort. The Court presumes that the automobile subject to the reaffirmation was the 1989 Escort.

9. Mileage on the Jeep and the Escort are approximately 106,000 and 90,000.

10. The Debtor testified that the current balance due on the house and lot was $62,000 and that the property was worth approximately $72,000. The trustee in this case has filed a final report and has abandoned all property to the Debtors. The trustee considered this case a no asset case.

*In re Andrews,* 661 F.2d 702 (8th Cir.1981); *Cuenca v. Dept of Education,* 64 F.3d 669 1995 WL 499511 (10th Cir.1995) (unpublished opinion); *Gilchrist v. Dept. of Education,* 865 F.2d 1329 (D.C.Cir.1988) (unpublished opinion).

The divisions of the Northern District of Alabama have also considered specific tests for "undue hardship." In 1980 the Southern Division of this Court considered factors expressed by the Commission on the Bankruptcy Laws of the United States, an organization established in 1970. *In the Matter of Hemmen,* 7 B.R. 63 (Bankr.N.D.Ala.1980). In 1989 The Eastern Division of this Court considered whether the debt could be paid through a payment plan. *In re Doyle,* 106 B.R. 272 (Bankr.N.D.Ala.1989). In 1994 the Northern Division of this Court considered the debtor's rate of pay, job skills, ability to obtain and retain a job, level of education, health and expenses. *In re Singleton,* 172 B.R. 994 (Bankr.N.D.Ala.1994). For purposes of this case, this Court adopts the three-part test from *Brunner v. New York State Higher Edu. Serv. Corp.,* 831 F.2d 395, 396 (2nd Cir.1987).

In order for Mr. Halverson to prevail he must satisfy all three parts of the *Brunner* test. "The first prong of *Brunner* requires an examination of the debtor's current financial condition to see if payment of the loans would cause his standard of living to fall below that minimally necessary." *In the Matter of Roberson,* 999 F.2d 1132, 1135 (7th Cir.1993). Mr. Halverson testified on several occasions, and his attorney argued, that the Debtors' current expenses exceeded their current income. This Court does not equate the failure to balance a budget with the failure to maintain a "minimum standard of living." [11] While this Court will not speculate on what is a minimum standard of living, using common sense this Court finds that a combined total net income of approximately $21,000 per year for a family of three, must be above a "minimum" standard of living and that the payment of some amount toward the student loan, maybe $50.00 per month, would not cause the Debtors' and their dependents' standard of living to fall below that "minimum.[12]" The facts demonstrate that the Debtors' expenses exceed their income, but when the Debtors are removed from direct obligation on the note and mortgage for the lot bought and house built in 1992, the Debtors should be able to balance their budget, even assuming the payment of reasonable rent for the property.[13] This Court is sympathetic with the Debtors' plight. But Congress, courts of appeals, and bankruptcy courts addressing this issue, clearly recognized a heightened standard of dischargeability.[14]

11. For convenience some courts recognize the United States Department of Health and Human Services Poverty Guidelines as the level of a "minimum standard of living" and recognize an annual income above or below that as exceeding or falling below the "minimum standard of living." The undersigned has fortunately never had firsthand experience of these levels. The undersigned has neither had long-term exposure to those who have. There are aspects of judging that lend themselves to extrapolation from the facts presented and there are areas that do not. This is an area that does not.

12. A family of three excludes Mr. Halverson's second child living apart. Any expense amount used as the antitheses of the Debtors' combined net income should exclude the child support payments Mr. Halverson should make for that child but may be able to offset against child support owed for the child living with him unless they are significantly different.

13. At the close of the hearing on this matter the Court suggested to Mr. Halverson that he contact the local office of the Consumer Credit Counsel-

ing Agency at 309 23rd Street North, Birmingham, Alabama 35203, telephone number 251–1572.

14. "Student loans 'should not as a matter of policy be dischargeable before [the debtor] has demonstrated that for any reason he is unable to earn sufficient income to maintain himself and his dependents and to repay the educational debt.' " *In the Matter of Roberson,* 999 F.2d 1132, 1135 (7th Cir.1993) (citing Comm'n on the Bankruptcy Laws of the United States, Report, H.R.Doc. No. 137, 93rd Cong., 1st Sess., Pt. II, st 140 n. 15 (1973)). A review of cases in the area reveals sad stories.

The debtor in *In re Reilly* was a divorced mother of three young children whose exhusband was incurably ill and could not contribute to the support of his family. *Reilly v. United Student Aid Funds, Inc. (In re Reilly),* 118 B.R. 38, 41 (Bankr.D.Md.1990). The debtor was working both a full-time and a part-time job, living with her parents at minimal rent, and *still* could not cover her family's monthly expenses.

"The second prong of the *Brunner* test properly recognizes the potential continuing benefit of an education, and imputes to the meaning of 'undue hardship' a requirement that the debtor show his dire financial condition is likely to exist for a significant portion of the repayment period." *Id.* Mr. Halverson expects raises in his present job within the next four to six months, but aside from the mechanical calculation, there are no factual reasons why the Debtors' financial condition, although not dire currently, should deteriorate.

The third part of the *Brunner* test considers, "whether the debtor has made a good faith effort to repay his loans." *Id.* at 1136. Although Mr. Halverson has not satisfied either parts one or two of the *Brunner* test, and consequently cannot qualify for a discharge of this student loan debt, this Court should comment that the facts demonstrate that Mr. Halverson made attempts to pay the loans and attempts to enter into a payment schedule with PHEAA. Those attempts failed for various reasons; however, counsel for PHEAA stated that PHEAA would be willing to discuss a plan for the future.

## Conclusion

For the reason expressed above the Court finds that the debt owed to PHEAA does not qualify for a discharge in this case and that the relief prayed for in the complaint is due to be denied.[15] A separate order in conformity with this opinion will be entered.

## ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF STUDENT LOAN DEBT

In conformity with the memorandum opinion entered contemporaneously herewith, it is **ORDERED** that:

1. Judgment is entered in favor of the Defendant Pennsylvania Higher Education Assistance Agency and against the Plaintiff.

2. The student loan debt of $10,710.65 owed by the Plaintiff to the Pennsylvania Higher Education Assistance Agency is not dischargeable in this case.

3. The Motion for Summary Judgment filed by the United States Department of Education is withdrawn.

---

*In re Walcott,* 185 B.R. 721 (Bankr.E.D.N.C. 1995) at 725; and,

*In the Matter of Carol A. Diaz,* 5 B.R. 253 (Bkrtcy.W.D. New York, 1980) 2 C.B.C.2d 501 (Hayes, B.J.), where a Chapter 7 debtor sought discharge of her student loan. The only disputed issue was whether excepting the debt from discharge would impose an "undue hardship" within the meaning of that phrase in the Bankruptcy Code's provision dealing with discharge of student loans. The debtor's monthly income exceeded her income, which was limited because physical problems made it impossible for her to work more than a half a day. The debtor needed a hearing aid and an operation, neither of which she was able to afford. Among other serious illnesses, the debtor had suffered a heart attack, had an alcoholic problem and had been hospitalized for psychiatric difficulties. The debtor was divorced from her former husband who was confined to a mental clinic. She had four children of whom one required dental work and psychiatric care, neither of which had been provided because of lack of funds. After listing the debtor's family and health problems and the fact that she was spending more each week than she took in, the Court ruled that it would work an undue hardship upon both the debtor and her dependent to except the debt from discharge.

*In the Matter of Hemmen,* 7 B.R. 63, 66 (Bankr. N.D.Ala.1980).

15. The United States Department of Education participated in this matter. The Department filed a Motion for Summary Judgment but withdrew that motion before trial. The Department was not a party defendant and there is no evidence that there was a connection between the loan subject to the hearing and the Department. For those reasons this Court need not decide whether there is an outstanding student loan debt to the Department.