In re Vivian ROBINSON, Debtor.

Vivian ROBINSON, Plaintiff,

v.

UNITED STATES DEPARTMENT OF EDUCATION, Defendant.

Bankruptcy No. 91–06596–TOM–7.
Adv. No. 95–00279.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Feb. 16, 1996.

Oscar W. Adams, Birmingham, Alabama, for Debtor Vivian Robinson.

ations which guided the court in *TranSouth* are not be applicable in this case to direct a similar result.

Richard O'Neal, Birmingham, Alabama, Assistant United States Attorney, for United States Department of Education.

## MEMORANDUM OPINION
### TAMARA O. MITCHELL, Chief Judge.

This matter is before the Court following a trial on the merits of the Complaint to Determine Dischargeability of Debtor Vivian Robinson. Appearing at the January 17, 1996, trial were Oscar W. Adams, attorney for Vivian Robinson, and Richard O'Neal, assistant United States Attorney, appearing for the United States Department of Education National Payment Center (Department). This Court has jurisdiction. 28 U.S.C. § 1334(b). This is a core proceeding. 28 U.S.C. § 157(b)(2)(I). The Court has considered the testimony, the evidence submitted, the pleadings, the arguments of counsel and the law and finds and concludes as follows.[1]

### FINDINGS OF FACT

Ms. Robinson obtained a student loan sometime in 1987[2] in order to participate in a home correspondence course to train her for a job as a secretary. She graduated from the course in the summer of 1989. The first payment on the loan became due six months later. Ms. Robinson testified that she did not immediately find employment after her graduation and "tried to get" a forbearance of the repayment of the loan. There was no evidence as to why the forbearance was denied or if it was even properly requested. Since graduating from the course, Ms. Robinson has been employed in several different jobs. She has worked sporadically in the fast food industry as a server, in the health care industry as a secretary/file clerk, and with another company in the customer complaints department.

Ms. Robinson's most steady employment was from approximately June 1993 until November 1995 as an accounts receivable clerk with Miles College where she took home an approximate average of $770.00 bi-weekly.

She voluntarily resigned her job with Miles College in November 1995 in order to take a similar job with the state fair. She had not yet begun that job at the time of the trial. Ms. Robinson testified that she had been told that her job was "on hold" because of the financial problems the state fair was experiencing. She still expects to start at that job at some time in the future and has neither sought new employment nor tried to return to her job with Miles College since learning the problems at the state fair. Ms. Robinson was vague as to what the terms of her employment were to be at the state fair but felt that she would make more there than at Miles College.

Ms. Robinson has two minor children. She lives in a house which is owned by her mother. When she is employed, Ms. Robinson pays her mother $173.00 per month to cover the mortgage payment on the house and pays $225.00 per month towards the utilities. When Ms. Robinson is not employed, her mother allows her to live in the house without making the mortgage and utility payments and also contributes to paying for the food and clothing for Ms. Robinson and her children. Ms. Robinson does not own a car but has access to her mother's automobile to use for personal transportation. The family receives $114.00 per month in SSI and received food stamps of $297.00 per month before Ms. Robinson became employed at Miles College. She has not reapplied for food stamps because she is waiting for the job at the state fair to start.

Few voluntary payments have been made on this loan since it became due. Ms. Robinson testified that she believes she paid approximately $120.00 on the loan while employed part-time in the fast food industry. She made no payments while at Miles College. The government seized Ms. Robinson's 1994 tax refund and applied it to the loan. The amount of the tax refund is not in evidence but was generated from taxes paid by

---

1. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. The only testimony submitted by either side was the testimony of Ms. Robinson. The only exhibits offered into evidence were four of Ms. Robinson's paystubs from her last job at Miles College. No one introduced the loan documents. No one introduced evidence of the amount due on the loan nor as to the payment schedule.

Ms. Robinson on her winnings at the dog track. Ms. Robinson estimated that she won approximately $1500.00. Ms. Robinson failed to use any of this money to pay on the student loan. She also expects a tax refund for the 1995 tax year but is unsure of the amount.

Ms. Robinson filed for relief under Chapter 7 of the Bankruptcy Code on August 30, 1991. The debt on the student loan was not listed in the schedules. On September 3, 1991, a notice was issued by the clerk of the court indicating that there were no assets available from which payment to unsecured creditors could be made. Ms. Robinson obtained a discharge of all dischargeable debts on April 27, 1993. An order was entered by this Court on May 4, 1993, closing the estate and discharging the trustee. On May 5, 1995, Ms. Robinson moved to reopen her case in order to file a complaint to determine the dischargeability of the student loan. That motion was granted by order of the court on May 11, 1995. Ms. Robinson's complaint was filed on June 23, 1995 and alleges that the loan is dischargeable under 11 U.S.C. § 523(a)(8)(A). In open court, counsel for Ms. Robinson stipulated that the debt first became payable less than seven years prior to the date of the filing of the petition and, therefore, did not fall under § 523(a)(8)(A). Ms. Robinson proceeded at the trial solely under § 523(a)(8)(B).

## CONCLUSIONS OF LAW

■ Subsection (a)(8)(B) states that:
(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

.     .     .     .     .

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-

profit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—

.     .     .     .     .

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

The burden of proof under § 523(a)(8)(B) is divided between the parties. The creditor bears the initial burden of establishing the existence of a debt which is owed to, insured by, or guaranteed by a governmental agency or nonprofit institution, and that the debt first became payable less than seven years prior to the date of the filing of the petition. *Halverson v. Pennsylvania Higher Education Assistance Agency (In re Halverson)*, 189 B.R. 840 (Bankr.N.D.Ala.1995). In the instant case, Ms. Robinson admitted that she owes a debt to the Department on a student loan and that the loan first became due less than seven years before the date of her bankruptcy petition. The Department has satisfied its burden of proof.[3] The burden now shifts to the debtor to prove that repaying the loan would cause an "undue hardship." *Id.* Ms. Robinson has failed to satisfy her burden of proof.

■ The phrase "undue hardship" is not defined by the Code. It is a term of art and its definition is left to the discretion and judgment of the Court. Many tests have been formulated by the courts to determine when the nondischargeability of a student loan debt will create an "undue hardship." One test for determining undue hardship was set out in *Pennsylvania Higher Education Assistance Agency v. Deborah Lee Johnson (In re Johnson)*, 5 Bankr.Ct.Dec. (CRR) 532 (Bankr.E.D.Pa.1979)). This Court adopted the *Johnson* test previously in its unpublished decision in the case of *Stewart v. Alabama Guaranteed Student Loan Program (In re Stewart)*, AP 95–00129 (July 14, 1995).[4]

---

**3.** The Department did not prove the exact amount of the debt due to it. This, however, is not required. The creditor is only required to prove that it is the type of institution covered and that a debt of the type specified is owed by the debtor to it. The amount of the debt would necessarily be relevant to the existence of undue hardship. Therefore, it was the debtor's burden to prove the amount of the debt owed.

**4.** The Court in its opinion in *Stewart* adopted the test applied in *Conner v. Illinois State Scholarship Commission, (In re Conner)*, 89 B.R. 744 (Bankr.N.D.Ill.1988). The elements of the test applied in *Conner* are the same as those applied in *Johnson* and the *Conner* court frequently cited the *Johnson* opinion. For consistency with the growing trend in the nation, the test will herein be referred to as the *Johnson* test.

This is also the test which was adopted by the Honorable Michael Stilson sitting in the Southern Division of the Northern District of Alabama in the unpublished decision in *Howell v. The Education Resources Institute, Inc., (In re Howell)*, AP 95–70374 (January 5, 1996).

The first test applied by the *Johnson* court was a mechanical test under which the court compares the debtor's present and future income and expenses and surrounding circumstances to determine whether it is reasonable to require the debtor to pay the loan in whole or in part. *Johnson*, 5 Bankr.Ct. Dec. (CRR) 532. The second test is a good faith test which focuses on whether the debtor has made a good faith effort to begin repayment of the loan, to renegotiate the loan, and to minimize expenses and perhaps find a better paying job. *Id.* Finally, the third test is a policy test whereby the court attempts to determine whether discharging part of or the entire student loan obligation would frustrate the Congressional policy underlying 11 U.S.C. § 523(a)(8). *Id.*

Other courts have recently adopted the test set out in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2nd Cir.1987).[5] This is also the test which was adopted by the Honorable Benjamin Cohen in this division in *Halverson v. Pennsylvania Higher Education Assistance Agency (In re Halverson)*, 189 B.R. 840 (Bankr.N.D.Ala.1995). The *Brunner* test requires three showings to satisfy the burden of proving "undue hardship": (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. *Brunner*, 831 F.2d at 396.

The only difference between the *Johnson* test and the *Brunner* test is that the *Johnson* test expressly requires a determination of whether discharging the student loans would frustrate the Congressional policy underlying 11 U.S.C. § 523(a)(8). Under this test, the court may examine whether the primary motivation for filing the bankruptcy petition was the discharge of the student loans and whether the debtor received any benefit from the education funded by the loans. *See Conner v. Illinois State Scholarship Commission (In re Conner)*, 89 B.R. 744, 749 (Bankr.N.D.Ill.1988). The debtor's motivation for filing the bankruptcy could be examined by courts under the good faith prong of the *Brunner* test. Therefore, the difference between the two tests is no more than whether the court will consider the benefit of the education to the debtor.

Like the *Conner* court, this Court intends to place little weight on this third and final factor of the third prong except in those unusual circumstances where it might become particularly relevant. However, it occurs to the Court that there may be situations where the determinations under the other factors are so evenly balanced that consideration of whether the debtor is utilizing the education he received with the student loans or whether that education has been of no benefit to the debtor would indicate something about the equities of the situation.

This Court sees the final factor as another indication of whether the debtor has created his own financial hardships. Where the debtor has incurred debt in pursuing an education with the hopes of obtaining a better paying job only to find out too late that the education was worthless, the equities are certainly stronger in favor of discharging the debt than in the case where the debtor is presently employed in the exact position for which he trained. It should also be kept in mind that the three tests are used in combination. Therefore, the fact that the debtor received no benefit from the education will never, alone, lead to the discharge of the debt. Likewise, even if a debtor is receiving benefit from the education it would still be possible to prove that discharge of the debt would not frustrate the policies behind 11

---

**5.** *See, Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298 (3rd Cir.1995); *Cheesman v. Tennessee Student Assistance Corporation (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994); *In re Roberson*, 999 F.2d 1132 (7th Cir.1993).

U.S.C. § 523(a)(8)(B) and, thus, obtain the discharge. As Ms. Robinson has failed both the mechanical test and the good faith test, this third factor is not even reached in making the determination in this case.

Not only has Ms. Robinson failed to demonstrate any "undue hardship," she has failed to prove that the repayment of this debt would cause any hardship on her at all. Ms. Robinson and her children lead the same lives regardless of whether she is employed or not and regardless of the amount of debt which she has. During the periods of time when Ms. Robinson is unemployed and unable to make ends meet, her mother apparently provides anything the family needs. When Ms. Robinson is employed, her mother makes less contribution towards her expenses. Therefore, if Ms. Robinson were to repay this debt, this Court concludes from her testimony that there will be no appreciable difference for Ms. Robinson or her children. It is also impossible for the Court to conclude that Ms. Robinson will suffer any undue hardship if forced to repay the loan because there was no evidence of the amount of the loan or of the necessary monthly payments. Thus it is not possible to determine that it would be unreasonable to require her to repay these amounts.

Ms. Robinson has also failed to demonstrate good faith. She made only $120.00 in voluntary payments on this debt during the years it has been due. When she was working full time, she did not make any effort to pay even though it would not have affected the lifestyle of herself or her children. Ms. Robinson did not make any payment on the student loan debt when she received the windfall of the winnings at the dog track. Additionally, Ms. Robinson demonstrated a lack of diligence in seeking meaningful employment. Over two months had passed at the time of trial since she had learned that the state fair job would not begin immediately. During that time she did not seek other employment nor did she press the prospective employer for a more definite commitment. The evidence of lack of good faith combined with the results of the mechanical test convinces this Court that the entire amount of the loan, whatever that might be, is nondischargeable. An appropriate order and judgment will be rendered in accordance with the foregoing.