**In re Leslie David O'FLAHERTY, Debtor.**

**Leslie David O'FLAHERTY, Plaintiff,**

**v.**

**NELLIE MAE, INC., Defendant.**

**Bankruptcy No. 95–05760–BGC–7.**
**Adversary No. 95–00497.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Jan. 6, 1997.

---

Frederick Garfield, Birmingham, Alabama, for Plaintiff–Debtor.

Debra Bennett Winston, Birmingham, Alabama, for Defendant.

## MEMORANDUM OPINION ON DISCHARGEABILITY OF STUDENT LOAN

BENJAMIN COHEN, Bankruptcy Judge.

This matter came before the Court on a *Complaint to Determine Dischargeability of Student Loan Debts* filed by the debtor on November 15, 1995.[1] After notice, a trial was held on October 9, 1996. Leslie David O'Flaherty, the Debtor; Frederick Garfield, the attorney for the Debtor; and Debra Winston, the attorney for Defendant Nellie Mae, Inc., appeared. The matter was submitted on the testimony of the debtor and on documentary evidence admitted without objection.

### I. Contentions

The debtor attended several secular and religious institutions in pursuit of ordination as a Catholic priest. The debt at issue arises from the debtor's attendance at one of those institutions, the DeSales School of Theology.

The debtor contends that the money spent in pursuit of his goal of ordination should not be repaid because he has not been able to fulfill that goal.[2] On that basis, the debtor

---

1. Default judgments against two other defendants have been entered in favor of the debtor. Those judgments affect approximately $50,000.00 in student loans.

2. The debtor testified in detail about the various actions he believes have prevented him from obtaining his goal. The debtor contends that this Court should consider this type of testimony and in support of that argument the debtor refers this

Court to *In re Evans*, 131 B.R. 372 (Bankr. S.D.Ohio 1991); *In re Albert*, 25 B.R. 98 (Bankr. N.D.Ohio 1982); and, *Pennsylvania Higher Education Assistance Agency v. Johnson*, 5 B.C.D. 532 (Bankr.E.D.Pa.1979). While this Court is sympathetic with the debtor's situation, the Court has chosen to apply the test described by the Court of Appeals for the Second Circuit in *Brunner v. New York State Higher Edu. Serv.*

contends that the DeSales debt should be discharged because the sole area of study represented by the DeSales loan was for the purpose of reaching the goal of ordination.[3] The debtor concludes that his DeSales debt should not be excepted from his discharge and that pursuant to 11 U.S.C. § 523(a)(8) the debt should be discharged.

The defendant, the agency guaranteeing the student loan, contends that the debt should not be discharged.

## II.  Burdens of Proof

■ In *Halverson v. Pennsylvania Higher Education Assistance Agency (In re Halverson)*, 189 B.R. 840 (Bankr.N.D.Ala.1995) this Court recognized that where the dischargeability of a student loan is at issue, the party opposing dischargeability must prove: (1) the existence of a debt; (2) that is owed to a government agency; (3) that first became payable less than seven years prior to the date of bankruptcy. *Id.* at 841. If the party opposing discharge satisfies these three requirements, if the debt is to be discharged, the debtor must prove "undue hardship," as that term is used in 11 U.S.C. § 523(a)(8)(B). *Id.*[4]

## III.  Findings of Fact

The debtor obtained an undergraduate degree from the University of Alabama at Birmingham, in Birmingham, Alabama. After completing that degree the debtor entered Catholic University/Theological College. The debtor's goal was to be ordained as a Catholic priest and he completed four years of that training before involuntarily leaving the Catholic University program.

Because the debtor did not complete his training and was unable to arrange for continued training, he has been unable to complete his studies and has not been ordained.[5]

The debtor currently works as an operations manager with the Georgia Pacific Corporation.  His post-seminary work began with a temporary work program and through that program he was able to secure a permanent position with Georgia Pacific.  The debtor began with Georgia Pacific in October 1994 as a billing clerk in Birmingham, Alabama.  The Birmingham office closed in the Summer of 1995 and he transferred to Tampa, Florida.  His position in Tampa was as an operations manager.  On an annual salary basis the debtor's salary began at approximately $19,800.00 and rose to $24,000.00, plus benefits.  When the debtor filed his bankruptcy petition his salary was $24,000.00 per year.

The debtor continues to work for Georgia Pacific in the Boston, Massachusetts area. His current salary is approximately $31,000.00 per year.  He continues to hold his position as an operations manager.

Because the debtor only recently made his move to Massachusetts, he is able only to estimate his current expenses.[6]  But the debtor recognizes, as does the Court, that living expenses in the Boston area will probably be higher than those in the Tampa area. The debtor's estimated expenses do not seem unreasonable.  The expenses are typical and

---

*Corp.*, 831 F.2d 395, 396 (2nd Cir.1987). That test does not include consideration of the criteria suggested by the debtor.

3.  The debtor explained that a sponsoring archdiocese was necessary for ordination and that he had been unable to secure such support. From a bankruptcy dischargeability perspective, this failure is important not only because it prevents ordination but also that, as the debtor explained, he can not now qualify for a loan repayment by a sponsoring archdiocese.

4.  Because there are no issues as to the above three requirements, as the parties agree on the facts that satisfy all three, the only issue in this case is whether excepting the debt from discharge will impose an undue hardship on the debtor or the debtor's dependents.

5.  As explained in note 3 above, securing the sponsorship of an archdiocese is another requirement for ordination, a requirement the debtor has not satisfied.

6.  This problem is compounded by the facts that while in seminary the debtor had few expenses as most of his living expenses were provided for by the schools he attended and that he was not required to account for individual items.  In addition, while in Tampa the debtor had few expenses.  His employer paid for an apartment and an automobile.  The debtor paid expenses associated with the car but paid only telephone costs associated with the apartment.

normal. And *other than a monthly deposit for a personal savings account,* the specific items listed do not impact this litigation.[7]

The debtor's mother is a co-signer on his student loans. She is retired and receives social security benefits and has access to military veteran's benefits. The debtor's mother owns a home in Shelby County, Alabama.

The debtor's mother has assisted him with his living expenses, and continues to do so. When the debtor moved to Tampa, his mother loaned him money to purchase furniture. They shared a credit card; they shared an automobile; and they have tentative plans for the debtor's mother to sell her home in Birmingham and move to the Boston area where the two of them will purchase a home and live.

When the debtor moved to the Boston area his mother loaned him approximately $18,000.00 to help with the purchase of an automobile (if he were unable to obtain a loan for this and other expenses.) The debtor testified that he maintains the $18,000.00 in a checking account.[8]

Officially the debtor is still a student at DeSales. If he completes his master's thesis, he will complete the requirements for his seminary degree.

For purposes of the instant litigation, the debtor stipulated that the debt involved is a debt to a government agency. The parties agree that the debt is one that first became payable less than seven years prior to this bankruptcy.[9]

---

7. The debtor testified that as part of his current monthly estimated budget, he included a deposit of $100.00 into a savings account.

8. The debtor has other assets of small amounts in an employer sponsored retirement plan and a personal savings account.

9. While the parties agreed that the debt is one that is owed to a government agency that first became payable less than seven years prior to the date of bankruptcy, the parties do not agree on the amount of the debt. The debtor agrees that the initial loan was $14,000.00. The evidence demonstrates that the debtor agreed to include the defendant's servicing fee of $800.00 in the loan making the principal of the loan $14,800.00. The parties' contract allowed interest on that amount but the amount of the interest was dependent on calculations relating to prevailing

## IV. Conclusions of Law

■ The defendant has, through the debtor's stipulations and agreements, met its burden of proof. This Court finds that there is a student loan debt, of less than seven years old, due to a government agency. As to the debtor's burden of proving that repayment of the debt would impose an undue hardship on him, the Court finds that this burden has not been satisfied.

■ In making a decision in a similar but unrelated case, this Court adopted the test described by the Court of Appeals for the Second Circuit in *Brunner v. New York State Higher Edu. Serv. Corp.,* 831 F.2d 395, 396 (2nd Cir.1987) to determine whether a debtor qualifies for the undue hardship portion of section 523(a)(8).[10] Under the *Brunner* test, a debtor must demonstrate: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and, (3) that the debtor has made a good faith effort to repay the loans. *Halverson v. Pennsylvania Higher Education Assistance Agency (In re Halverson),* 189 B.R. at 844. For application in the instant matter, this Court adopts the *Brunner* test and adopts the burden of proof analysis and the dischargeability factors recognized in *Halverson v. Pennsylvania Higher Education Assistance Agency (In re Halverson),*

---

interest rates. The debtor agrees that there is interest due but does not stipulate to the defendant's calculations. No one testified about the interest rates or the calculations; consequently the only evidence before the Court regarding the amount of the debt is $14,800.00. For purposes of this proceeding, the Court finds that the non-dischargeable amount due this defendant is $14,800.00.

10. See *Halverson.* The debtor argues that a different standard should apply. This Court disagrees and believes that the *Brunner* test is the correct test to apply and it appears that a majority of courts agree. The standard the debtor urges is discussed in the cases cited in note 2 above.

189 B.R. 840 (Bankr.N.D.Ala.1995) and relies on the opinion and order published in that case in reaching the conclusions herein.

In applying the *Brunner* test, the Court finds that the debtor did not satisfy his burden of proving that repayment of the loan would impose an undue hardship on him. For this reason the Court must find for the defendant.

■ The debtor's employment history, current financial condition and family assistance all demonstrate that the debtor can maintain, based on current income and expenses, a "minimal" standard of living for himself if required to repay his DeSales student loan. Having adopted the *Brunner* tests to determine undue hardship questions, this Court must consistently apply that test and consider the debtor's "current income and expenses" rather than the debtor's ability to utilize the education he acquired through the loan.[11]

"The first prong of Brunner requires an examination of the debtor's current financial condition to see if payment of the loans would cause his standard of living to fall below that minimally necessary." *In the Matter of Roberson*, 999 F.2d 1132, 1135 (7th Cir.1993). Mr. O'Flaherty testified, that his current expenses could exceeded his current

income but this Court does not equate the failure to balance a budget with the failure to maintain a "minimum standard of living," and this Court will not speculate on what is a minimum standard of living.[12] On the other hand, using common sense, this Court can, and does, find than an income of approximately $31,000.00 per year for a single individual with no dependents, must be above a "minimum" standard of living and that the payment of some amount toward the student loan, would not cause the debtor's standard of living to fall below that "minimum."

This Court is sympathetic with the debtor's failure to realize what is obviously a lifetime goal and one that the debtor still desires. But Congress, courts of appeals, and bankruptcy courts addressing this issue, clearly recognized a heightened standard of dischargeability for student loans and recognize that, "Student loans 'should not as a matter of policy be dischargeable before [the debtor] has demonstrated that for any reason he is unable to earn sufficient income to maintain himself and his dependents and to repay the educational debt.'" *In the Matter of Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993) (citing Comm'n on the Bankruptcy Laws of the United States, Report, H.R.Doc. No. 137, 93rd Cong., 1st Sess., Pt. II, st 140 n. 15 (1973)).[13]

---

11. Clearly the *Brunner* test and the cases discussing it address a debtor's financial condition at the time of bankruptcy not the circumstances surrounding a failure to utilize educational benefits derived from a loan that subsequently is the subject of a dischargeability complaint; consequently, unless some unusual circumstances exist, which are not present here, this Court should decide this matter based on the debtor's current financial condition as the *Brunner* test requires.

12. For convenience some courts recognize the United States Department of Health and Human Services Poverty Guidelines as the level of a "minimum standard of living" and recognize an annual income above or below that as exceeding or falling below the "minimum standard of living." This Court disagrees as it cannot accept that a standard of living in poverty is an acceptable standard of living, below which there are levels of less comfort.

13. In comparison to the debtor's circumstances, the facts of two cases, where discharges of students loans were allowed, reveal extreme situations. *In the Matter of Carol A. Diaz*, 5 B.R. 253,

253–54 (Bkrtcy.W.D. New York, 1980), the facts were described as:

Mrs. Diaz is divorced and her former husband is confined to a mental clinic. She has four children and her age is 45. There are two children living at home; a son 18 and a daughter 16. She finished the ninth grade of school and got a high school equivalency diploma. She went to Monroe Community College part of 1975, 1976, 1977 and 1978. She received no degree because each semester that she went to school she was absent because of illness for one to two months.

Mrs. Diaz has had a series of illnesses. She has been confined to R-wing, the psychiatric wing, in Strong Memorial Hospital in Rochester, New York. She had a number of different surgeries. In 1979, she suffered a heart attack. She needs surgery in the future for female problems and her work day is limited by the trouble she has with her legs and feet.

When Mrs. Diaz is employed, she works for the Monroe County Development Center as a dietary supervisor. When working, she brings home $279.00 every two weeks, net pay. Because of her physical problems, she works only half a day. The 16 year old daughter, who

"The second prong of the *Brunner* test properly recognizes the potential continuing benefit of an education, and imputes to the meaning of 'undue hardship' a requirement that the debtor show his dire financial condition is likely to exist for a significant portion of the repayment period." *Roberson* at 1135. The debtor expects raises in his present job, although he testified that he expects them to be of a lesser percentage than before. Considering the debtor's salary, expenses and potential for increased income, this Court finds that there are no factual reasons why the debtors' financial condition should deteriorate.

The third part of the *Brunner* test considers, "whether the debtor has made a good faith effort to repay his loans." *Roberson* at 1136. Although the debtor has not satisfied either parts one or two of the *Brunner* test, and consequently cannot qualify for a discharge of this student loan debt, this Court should comment that the facts demonstrate that he made attempts to pay the loans.

## V. Conclusion

The debtor's failure to realize his goal of ordination is unfortunate and his testimony about the reasons for that failure are compelling, but the events surrounding those circumstances do not change the outcome of this litigation. For the reasons expressed above the Court finds that the debt owed to the defendant is non-dischargeable. The debtor not only receives a significant salary for a single individual with no dependents, he also has cash in a checking account in excess of the amount of his student loan. In addition, he has budgeted for, and has already implemented an account for personal savings. His expenses are not extraordinary and this Court finds that he can maintain, based on current income and expenses, a "minimal" standard of living for himself if required to

lives at home, receives a $177.10 a month in social security payments from the former spouse. Mrs. Diaz's total take home pay when working amounts to $592.88 per month. Mrs. Diaz owns the home she lives in. It was bought in 1978 for $11,500 and there presently is a mortgage of some $10,800. She drives a 1978 Chevrolet car which has a lien on it for about $8,000. She is not currently paying for the car. She uses the car for transportation for her and her family.

Mrs. Diaz's expenditures follow. Her mortgage payments are $166 per month. Utilities payments average $152 per month and her phone bill is $17 per month. She pays $150 for food for herself and the children each month. Her insurance on the house amounts to $21.25 per month. She allows in her budget $25 a month for clothes for her and the children. Her auto insurance amounts to $28 per month. It costs her $8 per month for water rents and $8 per month for sewage tax. She spends about $85 a month on gas. She has an alcoholic problem and she pays AA, which she attends daily, $3.50 a week. She owes a number of doctors whom she pays when and if she has the money.

Her daughter has teeth problems and needs to attend a psychiatric clinic. The daughter has not been having the teeth taken care of nor attending the psychiatric clinic because of lack of funds. Mrs. Diaz needs an operation for female problems and needs a hearing aid, neither of which she has been able to afford. She is currently paying $663.75 out of the $592.88 which she brings home as pay when she's working and the daughter who receives the $177.10 in social security contributes the rest.

When and if Mrs. Diaz takes time out to have the operation she needs, there will be no supplementary income for the period she is away from work. When asked how she managed to feed three people on $150 per month, she replied they eat a lot of spaghetti.

In *Reilly v. United Student Aid Funds, Inc. (In re Reilly)*, 118 B.R. 38, 41 (Bankr.D.Md.1990), the facts were described as:

[The debtor] is a divorced mother of three young children. Her former husband is incurably ill and is unable to contribute significantly to their support. The family home was sold at foreclosure and the debtor and her children were forced to move in with her parents, where she pays rent of $250 per month. Despite the fact that the debtor is employed at a full-time job and even works part-time, her monthly income is not sufficient to meet the family's necessary expenses. According to her testimony, her total monthly income (including child support) is $1,076, or $12,912 per year, which is only slightly above the 1988 poverty guideline for a family of four. There is a monthly deficit of approximately $600 of expenses over income. Because she requires approximately 24 credits in order to obtain her college degree, the debtor is not in a position to advance in her employment.

The debtor's situation is certainly not as extreme as these, and probably does not need to be in order to qualify for an undue hardship of a student loan, but somewhere between the lives of the above two debtors and that of this debtor, there is a dividing line.

repay the loan provided by the defendant.[14]

14. Given that two default judgments on other student loans totaling approximately $50,000.00 have already been entered in the debtor's favor, the debtor truly has a fresh start from which to repay the loan due in this matter. Whether that repayment should be paid according to the terms of the parties' original agreement or on different terms, this Court leaves to the parties.